Foster, J.
Upon discovering that carpet beetles had damaged a pair of antique armchairs, an 18th Century Aubusson tapestry, and an expanse of imported broadloom carpeting, plaintiffs commenced this action for indemnity under an ‘1 all-risk ’ ’ personal property floater insurance policy. The policy insured to total limits of $382,818 all ‘ ‘ personal property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the Insured, and members of the Insured’s family of the same household, while in all situations, except as hereinafter provided ’ ’ against ‘1 all risks of loss of or damage to property covered, except as hereinafter provided.” Excluded by paragraph 6 (g) were losses caused by “ deterioration, moth, vermin and inherent vice ”.
The parties stipulated that due notice of the loss was given to the insurer, and that plaintiffs suffered damages in the sum of $2,000. The insurer, however, contended that damages by carpet beetles fell within the clause excluding damage caused by “ vermin ”. Whether or not “ carpet beetles ” fall within the category of “ vermin ” as that term is used in this all-risk personal property floater policy is the sole issue in this case.
After a nonjury trial, judgment was rendered for plaintiffs in the sum of $2,000. The Appellate Division, by a divided court, reversed upon the law and upon the facts and dismissed the complaint. Plaintiffs appeal as of right.
At the trial, plaintiffs’ expert, an exterminator who had taken courses on the subject of vermin and moths, testified that carpet *389 beetles and moths are members of the insect world; that only a certain category of insects are vermin; that vermin, as used in connection with insects, includes only those which are parasitic or are to be found in close connection with the human body; that this includes bedbugs, lice and fleas, which might suck blood or become imbedded in a person’s clothing and that a carpet beetle feeds on dead animal matter such as wool, silk, felt and leather, and is not associated with any portion of the human body. He further testified that moths are well recognized as fabric pests. In his opinion, a beetle would not be classified as “ vermin ” by an entomologist. The witness agreed with Funk and Wagnall’s definition that vermin are “ obnoxious insects, especially parasitic, as lice, fleas and bed bugs ”, but disagreed with Webster’s definition of “ vermin ” as “ any noxious, mischievous or disgusting animal, that is lice, bed bugs, fleas, house flies ”, on the ground that flies are not parasitic.
Defendant also produced an expert, a research associate in the Department of Insects and Spiders, American Museum of Natural History. The expert testified that a carpet beetle is a member of the coleopterous group of insects which frequently infest carpets; that the carpet beetle is not a “ moth ”; that the carpet beetle is not a parasite, but rather attacks material; that parasites such as bedbugs, fleas and lice do not feed on fabrics; that ‘1 vermin ’ ’ may be used as a term to denote an insect which infests material causing damage to the man who prizes it; and that he would include carpet beetles in the category of vermin, because they destroy material possessions important to humans. He acknowledged that “ vermin ” is not a scientific term, but rather that it is a popular colloquial expression with loose and varied popular and dictionary definitions.
Webster’s New International Dictionary (2d ed., Unabridged, 1956) defines the word vermin as “ n[oun] * * * 1. Any noxious, mischievous, or disgusting, animal * * * 2. Specif.: Such an animal, or esp. such animals collectively, when of small size, of common occurrence, and difficult to control. Various insects as flies, lice, bedbugs, fleas, etc., various mammals, as rats, mice, weasels, etc., and sometimes such birds as hawks and owls, are classed as vermin
Funk and Wagnall’s New Standard Dictionary, at page 2644, defines vermin as “ 1. * * * Obnoxious insects, especially *390 parasitic ones, as lice, fleas, or bedbugs. (2) [Eng.] Animals destructive to game, as weasels, polecats, badgers, otters, hawks, or owls. (3) [Austral.] Animals injurious to vegetation or to domestic animals.”
In England, the word £1 vermin ’ ’ has been defined by statute as follows: “ 1 vermin ’ includes bugs [bedbugs], fleas, lice and itch mites and their eggs, larvae and pupae ”. (Public Health [London] Act, 1936, 26 Geo. 5 & 1 Edw. 8, ch. 50, § 304, subd. [1]; 15 Halsbury’s Statutes of England [2d ed.], p. 1034). These creatures, constituting £ ‘ vermin ’ ’ under the English definition, all are parasitic in nature.
As indicated, experts well versed in entomology disagree as to the meaning of the word, and the dictionaries contain varying connotations, some indicating that vermin includes all bothersome insects, others limiting the term to parasitic insects. The term, therefore, obviously is capable of more than one meaning. This being so, the doubt in the exclusory clause must be resolved in favor of the insured. The burden was on the defendant in this case to establish that the term £ £ vermin ’ ’ not only was susceptible of being defined by the average man so as to include carpet beetles, but that such a definition was the only one that could “fairly be placed thereon ” (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49-50; Bronx Sav. Bank v. Weigandt, 1 N Y 2d 545, 551; see, also, Piliero v. Allstate Ins. Co., 12 A D 2d 130, 134; D’Agostino Excavators v. Globe Ind. Co., 7 AD 2d 483, 485). It was not sufficient for the defendant to demonstrate that a purchaser of the policy involved herein might have construed “ vermin” to include carpet beetles. Defendant, to derive any benefit from the exclusory clause, was obliged to show (1) that it would be unreasonable for the average man reading the policy to conclude that nonparasitic carpet beetles were not vermin and (2) that its own construction was the only one that fairly could be placed on the policy. This the defendant was unable to do.
Indeed, defendant itself manifested an uncertainty as to the meaning of the term (see Silverstein v. Commercial Cas. Ins. Co., 237 N. Y. 391, 393). The word used in the exclusion clause was ambiguous and capable of a definition which would not include carpet beetles and such ambiguity should have been resolved in favor of the insured (Fidelity & Cas. Co. of N. Y. v. *391 Groth, 296 N. Y. 788; Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574, 576-578). This rule has particular application where exclusions are involved (Shneiderman v. Metropolitan Cas. Co. of N. Y., 14 A D 2d 284, 289; Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F. 2d 824, 826; Mohawk Val. Fuel Co. v. Home Ind. Co., 8 Misc 2d 445; Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442, 447; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 313).
The insurer of these household furnishings is presumed to have been acquainted with the risks (cf. Globe & Rutgers Fire Ins. Co. v. Winter Garden Co., 9 F. 2d 227, 229). The risk of damage by carpet beetles was said by the Appellate Division to be only “too well known to New Yorkers ”. The risk, presumably known to the insurer, could have been excluded by a less vague term, as for example, damage by “moths” specifically was excluded. Direct reference to ‘ ‘ carpet beetles ” would have been preferable but even a simple statement excluding1‘ insects ’ ’ or ‘1 household pests ’ ’ would have sufficed. It should be noted that moths were treated separately, and such a separate treatment would have been unnecessary under the construction the insurer seeks to place upon the word “vermin”. From this express exclusion of “ moth ” damage it may be surmised that the defendant intended ‘ ‘ vermin ” to be construed in its narrow sense to include only parasites, and not fabric destroying insects and bugs, such as moths and carpet beetles.
This was an expensive “all-risk” policy covering personal property of many varieties, much of which obviously was extremely valuable. A vague exclusion here should not be permitted to prevent indemnity. The trial court found an ambiguity and the record supports that determination.
The judgment of the Appellate Division should be reversed and that of the Supreme Court reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fuld, Feoessel, Van Voorhis and Burke concur.
Judgment reversed, etc.