Kronish, Lieb, Shainswit, Weiner & Hellman, Seymour Shainswit, Abner P. Slatt, New York City, for plaintiff.

Hart & Hume, Jack Hart, Cecil Holland, Jr., New York City, for defendant.

**CHAMPION INTERNATIONAL CORPORATION, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. 70 Civ. 5277.**

United States District Court,
S. D. New York.

May 1, 1975.

## OPINION

SOLOMON, District Judge:

Champion International Corporation (Champion) filed this action to recover $1,000,000 from Continental Casualty Company (Continental), one of Champion's insurers. This Court has jurisdiction under 28 U.S.C. § 1332.

Champion sells construction materials, among other things. In 1969 and 1970, Champion bought a large number of vinyl covered plywood panels from Continental Vinyl Products Corporation (Continental Vinyl). Champion then sold the panels to many manufacturers, who installed them in the interiors of houseboats, house trailers, motor homes and

campers.[1] Many of the panels were defective; after they were installed, the vinyl covering peeled off and exposed the underlying raw plywood.

More than 1400 vehicles manufactured by at least 26 different firms were damaged by the defective panels. Champion assumed liability for the damages; it paid more than $1.6 million to settle the claims of the manufacturers and the purchasers of the damaged vehicles. The damage sustained by a single vehicle was always less than $5,000.

During 1969 and 1970, when it was discovered that many of the panels were defective, Champion was insured under two policies: a comprehensive general liability policy issued by Liberty Mutual Insurance Company (Liberty), and an umbrella excess third party liability policy issued by the defendant, Continental.

The Liberty policy provided Champion with the following coverage:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this policy applies, caused by an occurrence . . . but the company shall not be obligated to pay any claim or judgment . . . after the applicable limit of the company's liability has been exhausted by payments of judgments or settlements."

Liberty's coverage was limited to $100,000 for each "occurrence", and $200,000 aggregate, with a $5,000 deductible per occurrence.[2]

The Liberty policy defined "occurrence", "damages", and "property damage" as follows:

" 'occurrence' means . . . an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . . ."

"for the purpose of determining the limit of the company's liability . . . all . . . property damage arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as arising out of one occurrence."

" 'damages' includes . . . damages for loss of use of property resulting from property damage[.]"

" 'property damage' means injury to or destruction of tangible property."

The Liberty policy contained a provision on occurrences which result in damage over a long period:

"If the same occurrence gives rise to . . . property damage which occurs partly before and partly within the policy period, the each occurrence limit and the applicable aggregate limit or limits of this policy shall be reduced by the amount of each payment made by the company with respect to such occurrence under a previous policy or policies of which this policy is a replacement."

The Liberty policy also contained a provision relating to a single occurrence

---

1. The panels were usually sold in small lots, as required by the production schedules of the purchasing manufacturers. For example, Cobra Industries, Inc., received 105 separate shipments of the panels from January, 1969, to March, 1970; Cobra manufactured 224 of the damaged trailers from April 9, 1969, to November 19, 1969. Nauta-Line, Inc., manufactured 260 of the damaged houseboats from April 3, 1969, to June 26, 1970.

2. Endorsement No. 8 of the Liberty policy provided for a designation as to whether the deductible amount was to apply per claim or per occurrence. Per occurrence was chosen. Endorsement No. 8 provided:

"SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $ | per claim |
| | $ | per occurrence |
| Property Damage Liability | $ | per claim |
| | $5,000 | per occurrence" |

which results in property damage sustained by one or more persons.

"Coverage B—The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the declarations as applicable to 'each occurrence'."

The Continental policy provided coverage in excess of Liberty's basic policy. The Continental policy indemnified Champion for all money which Champion was obligated to pay

"for damages, direct or consequential, and expenses, all as defined by the term 'ultimate net loss' on account of . . . Property Damage . . . caused by or arising out of each occurrence."

The Continental policy defined "ultimate net loss" as the

". . . total sum which the Insured or any company as his insurer becomes obligated to pay by reason of . . . Property Damage . . ., either through adjudication or compromise, and all sums paid for expense[s] . . . ."

The limit of Continental's liability was $1,000,000 for any occurrence in excess of the amount recoverable from Liberty. Continental's liability was also limited to $1,000,000 for multiple occurrences.

"Occurrence" was defined as

". . . an event or continuous or repeated exposure to conditions, which unexpectedly causes . . . Property Damage . . . during the policy period."

Finally, the Continental policy contained the following provision:

". . . [I]n the event of loss for which [Champion] has coverage under [underlying insurance], the excess of which would be recoverable hereunder, except for terms and conditions of this policy which are not consistent with the underlying, then, notwithstanding anything contained herein to the contrary, this policy shall be amended to follow the terms and conditions of the applicable underlying insurances in respect of such loss."

Continental admits that the damage to the vehicles which resulted from the defective panels constituted property damage covered by the Liberty and Continental policies.[3]

Champion argues that the damage to all of the vehicles arose from a single occurrence. Under this interpretation, Champion may recover all of its damages, less the $5,000 deductible and less the $100,000 paid by Liberty, but not exceeding the $1,000,000 limit of liability.

Continental argues that the damage to each vehicle was a separate occurrence within the meaning of the policies. Because no vehicle sustained damage in excess of $5,000, the amount deductible for each occurrence, Continental argues that Champion is not entitled to anything under the Continental policy.

■ Each party contends that the language of the policies is clear and unequivocal and supports its contentions. Each party concedes that if a policy is ambiguous, the language is to be construed against the insurance company. The New York rule goes further and provides that if a policy can be reasonably construed in favor of the position asserted by the insured, he is entitled to

---

3. I believe that this is a fair conclusion from Continental's admissions that

"(1) the diminution in value of vehicles resulting from the delaminations of the panels constituted property damage within the 'products hazard' as those terms are defined in the Liberty Mutual policy and in the Umbrella Excess policy, and

(2) the liability of Champion for such property damage is a type of liability covered by the Liberty Mutual policy and the Umbrella Excess policy under the 'Products Hazard', subject only to the application of the limits of liability of the policies and the provisions of the policies with respect to other insurance."

**981**

recover. *See Datatab, Inc. v. St. Paul Fire & Marine Insurance Co.*, 347 F. Supp. 36, 38 (S.D.N.Y.1972); *Sincoff v. Liberty Mutual Fire Ins. Co.*, 11 N.Y. 2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899 (1962). This rule is particularly applicable when the policy is denominated a "comprehensive general liability policy". *National Screen Serv. Corp. v. United States Fidelity and Guaranty Co.*, 364 F.2d 275, 279–280 (2d Cir. 1968). Here the Liberty policy was so denominated. The Continental policy is an umbrella excess third party liability policy, which appears to afford even broader coverage.

I believe that this is a fair rule of construction. The contested provisions of both the Liberty and Continental policies are standard ones. They are in similar policies issued by many companies.

Insurance companies could prepare policies in clear, simple and precise language which would inform insureds of the limits of their coverage. Insurance companies could avoid the risk of ambiguity if they use short and precise words and short and simple sentences to express their intent clearly. In spite of continued admonitions of the courts to get rid of such language, insurance companies continue to issue such policies using insurance jargon and verbose and meaningless generalities, all of which result in ambiguities.

I do not know whether the Continental policy was ever intended to cover this type of loss. But Continental's admissions that this is the type of loss which the policy was designed to cover require me to decide this case solely on whether there was one occurrence which proximately resulted in damage to many vehicles, or whether the damage suffered by each of those vehicles was a separate occurrence.

On this issue, I find in favor of the plaintiff because I find that the contested language is ambiguous. The interpretation urged by the plaintiff may not be the only reasonable interpretation, but it is a reasonable one. That is all plaintiff is required to prove.

In making this determination, I have given no weight to the fact that Liberty, under its policy, paid Champion.

This opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

The parties may submit additional findings.

Plaintiff shall submit an appropriate judgment in accordance with this opinion.