■ SPOOR-LASHER Co., INC., Respondent, v AETNA CASUALTY AND SURETY COMPANY, Appellant, et al., Defendant.—In an action *inter alia* for a declaration that Aetna Casualty and Surety Company (Aetna) is obligated to defend plaintiff in a certain action and to pay any judgment which may be rendered against plaintiff in that action, Aetna appeals, as limited by its brief, from so much of an order of the Supreme Court, Dutchess County, dated September 30, 1974, as (1) granted plaintiff's motion for summary judgment against it, (2) directed the entry of judgment declaring that it is obligated to defend plaintiff in the certain action and to pay any judgment which may be rendered against plaintiff therein and (3) denied its cross motion for summary judgment. Order reversed insofar as appealed from, on the law, with $20 costs and disbursements; motion denied, cross motion granted, and it is declared that Aetna is not obligated to (1) defend the action commenced against plaintiff by the Poughkeepsie Urban Renewal Agency (PURA) or (2) pay any judgment which may be rendered against plaintiff in such action. Spoor-Lasher Co., Inc. (Spoor), as general contractor, undertook to convert a part of New Market Street, among other locations in the City of Poughkeepsie, into a pedestrian mall. The contract was entered into with the Poughkeepsie Urban Renewal Agency, a creature of the city. Spoor's work began on September 22, 1971, and was satisfactorily completed on June 30, 1972. The contract, however, had specified that the work would take no more than five weeks. Because New Market Street was closed to vehicular and pedestrian traffic during the construction work, Leslie C. Roe Associates (Roe), the owner of considerable real property on the east side of the street (not involved in the urban refurbishing), sued the city, PURA and the City Traffic Commission. It asserted causes of action in negligence and nuisance, the gravamen of which was that the arbitrary closing off of the street caused it to suffer a substantial loss of revenue because its premises were thereby rendered inaccessible to the public. In its contract with Spoor, PURA had included a "hold harmless" clause, which reads: "That contractor shall during the performance of this work take necessary precautions and place proper guards for the prevention of accidents, shall keep up all night suitable and sufficient lights, and shall indemnify and save harmless Local Public Agency, the Contractors, the Engineers, and their employees and agents from all claims, suits, and actions and all damages and costs to which they may be put by reason of death or injury to all persons or property of another resulting from unskillfulness, willfulness, negligence or carelessness in the performance of the work, or in guarding and protecting the same, or from any improper methods, materials, implements or appliances used in its performance, or construction, or by or on account of any direct or indirect act or omission of the Contractor or his employees or agents, and whether or not any active or passive or concurrent negligent act or omission by the employees, officers, or agents of the Owner or Engineer may have directly or indirectly caused or contributed thereto." Spoor, in turn, when purchasing its liability insurance policy from Aetna, asked it to include the "hold harmless" clause verbatim in the policy. Aetna complied with the request. At this point it should be noted that, while it is hornbook law that any ambiguities in a written instrument are to be resolved against the author (see *Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY 2d 386, 391),

Aetna had no hand in drafting the "hold harmless" clause. Upon being served as a third-party defendant in the Roe case, Spoor turned the papers over to Aetna. The latter refused to defend, contending that the policy did not cover the factual situation presented. Spoor thereupon commenced this action to have it determined that Aetna must appear and defend and pay any judgment obtained by PURA against it. Special Term granted summary judgment to Spoor. This appeal resulted. Defendant Continental Casualty Company is not involved in this appeal. Aetna invites attention to certain of the definitions in the insurance policy issued to Spoor, to wit: "occurrence", "property damage" and "damages." Those policy definitions are: " 'occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury and property damage neither expected nor intended from the standpoint of the insured". " 'property damage' means injury to or destruction of tangible property". " 'damages' includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage". As to Roe, its damages, if any, were not claimed to be caused to "tangible property"; nor, under the definition, were its damages the result of an "occurrence". "Tangible", as defined in Black's Law Dictionary (rev 4th ed), means "Capable of being touched; also, perceptible to the touch; tactile; palpable, and as being capable of being possessed or realized; readily apprehensible by the mind; real; substantial; evidence." Under none of the several definitions could the harm complained of by Roe qualify as a damage to property as defined in the policy. Spoor, in turn, calls attention to that portion of the "hold harmless" clause which reads: "or by or on account of any direct or indirect act or omission of the Contractor or his employees or agents, and whether or not any active or passive or concurrent negligent act or omission by the employees, officers, or agents of the Owner or Engineer may have directly or indirectly caused or contributed thereto" and claims that it directly obligates Aetna to defend and indemnify. To this, Aetna replies that Spoor, even in taking the cited portion out of context, and without relating it to the "hold harmless" clause in its entirety, still does not divorce the truncated remainder from the necessary imputation of negligence causing bodily injury or property damage. Spoor relies in large part on *Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.* (34 NY2d 356), and in particular on the following statement (p 361): "We cannot think that, given the economic and factual setting in which these policies were written, an ordinary business man in applying for insurance and reading the language of these policies when submitted, would not have thought himself covered against precisely the damage claims now asserted". In *Lipton,* a products liability action, the plaintiff's damage was caused directly or indirectly by one Gioia, who sold it contaminated goods. In that case, any literate person would have had to read the policy so as to afford protection to Gioia against Lipton's valid and meritorious claim. That is not so here. The entire "hold harmless" clause is instinct with the thought that some kind of physical injury or tangible property damage must occur before Aetna may be held liable. If, however, we accept the reasoning of Special Term, Spoor could have ridden roughshod over the wishes of the city merchants and could have finished the work at its leisure, secure in the knowledge that Aetna would pay for the damage occasioned by the delay. Such a result is difficult to fathom when we consider that insurance companies work on actuarial bases to arrive at the amount of premiums charged and that they leave nothing to speculation or surmise. In seeming bewilderment, Spoor wonders just what coverage it obtained if it did not

receive the coverage it is now seeking. Aetna responds that coverage for what happened here was certainly not within the contemplation of the parties. It points to the Illinois case of *Hartford Acc. & Ind. Co. v Case Foundation Co.,* (10 Ill App 3d 115) involving somewhat similar circumstances. There the insurance company, which invoked the same defenses as to the meaning of "occurrence" and "property damage", was relieved of any obligation to defend or to pay. In *Lionel Freedman, Inc. v Glens Falls Ins. Co.* (27 NY2d 364, 368), our highest court noted, with respect to affording a defense, that: "The courts have recognized that the obligation to defend is broader than the duty to pay *(Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148, 154). It extends to any action, however groundless, false or fraudulent, in which facts are alleged within the coverage afforded by the policy *(Prashker v United States Guar. Co.,* 1 NY2d 584). This duty includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased. But, if we can determine that no basis for recovery within the coverage of the policy is stated in the complaint, we may sustain defendant's refusal to defend." At bar, Aetna asserts it would be inconsistent for it to defend because the question of defense revolves around the definitions of "occurrence", "bodily injury" and "property damage", on which subjects it had made its position abundantly clear. Since the parties agree that the facts are not in dispute and that there are no factual issues to be resolved, summary judgment should have been granted to Aetna, declaring that it was under no obligation to defend the action or to pay any resulting judgment. Accordingly, for the reasons stated, the order should be reversed insofar as it is appealed from. Martuscello, Acting P. J., Latham, Cohalan and Christ, JJ., concur; Munder, J., dissents and votes to affirm the order insofar as it is appealed from, with the following memorandum: The policy of insurance issued by Aetna to Spoor was "tailor-made" for the Poughkeepsie Urban Renewal project. Aetna knew that Spoor would not be awarded the contract unless it agreed to the "hold harmless" clause. Aetna agreed to extend its coverage of Spoor to include the contract liability assumed by Spoor and specifically included the very language of the "hold harmless" clause in the policy. Under that clause, Spoor agreed to indemnify PURA "from all claims, suits, and actions and damages and costs to which they may be put by reason of death or injury to all persons or property of another resulting from unskillfulness, willfulness, negligence or carelessness in the performance of the work, or in guarding and protecting the same, or from any improper methods, materials, implements or appliances used in its performance or construction". It is clear to me that the allegations of the Roe complaint bring that action within the intendment of the above language and, obviously, PURA believes that also. Spoor was immediately impleaded. Given this background, the following excerpt from *Madawick Contr. Co. v Travelers Ins. Co.* (307 NY 111, 118) is directly in point: "Having incorporated the relevant portion of the subcontract in its insurance policy, and having indemnified the subcontractor against its liability thereunder, the insurance carrier must be deemed to have implemented this clause as part of the entire subcontract, insomuch as protection of the subcontractor against its liability to indemnify the general contractor meant protecting it under this clause however the clause might be affected by the terms and provisions of the agreement as a whole." Thus, the fact that Aetna can point to its definition of "property damage" as including only injury to or destruction of tangible property is unimportant. For one thing, the Roe complaint alleges damage to real property, and to me that should be considered "tangible" (see 29 NY

Jur, Insurance, § 650, p 640). More importantly, the obvious intent of the parties that Spoor should be protected against its liability under the "hold harmless" clause should control, "however the clause might be affected by the terms and provisions of the agreement as a whole" *(Madawick Contr. Co. v Travelers Ins. Co., supra,* p 118; see, also, *O'Dowd v American Sur. Co. of N.Y.,* 3 NY2d 347).