**WABCO TRADE COMPANY, DIVISION OF WORLD STANDARD EXPORT LTD., Plaintiff,**

v.

**S.S. INGER SKOU and S.S. AMARYLLIS, their engines, boilers, etc., GCC Shipping Co. Ltd., d/b/a Constellation Line; Ove Skou R/A; Hydra Navigation Co., Ltd. and Constellation Navigation Inc., Defendants.**

**WABCO TRADE COMPANY, DIVISION OF WORLD STANDARD EXPORT LTD., Petitioner,**

v.

**GREAT AMERICAN INSURANCE COMPANY, St. Paul Fire and Marine Insurance Company, Highlands Insurance Company and Continental Insurance Company, Respondents.**

77 Civ. 4299 (RWS).

United States District Court,
S. D. New York.

Dec. 16, 1980.

See also, 482 F.Supp. 444.

Donovan, Maloof, Walsh & Kennedy, New York City, for petitioner; Donald M. Kennedy, John A. V. Nicoletti, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for respondents; Donald F. Connors, New York City, of counsel.

## ORDER

SWEET, District Judge.

The plaintiff Wabco Trade Company, Division of World Standard Export Ltd. ("Wabco") obtained a judgment against defendants SS Inger Skou, SS Amaryllis, GCC Shipping Co. doing business as Constellation Line, and Constellation Navigation Inc. (collectively "GCC"). *See* opinion of this court dated October 24, 1979. Wabco now seeks to enforce that judgment in a special proceeding against GCC's insurers, the respondents Great American Insurance Company, St. Paul Fire and Marine Insurance Company, Highlands Insurance Company, and Continental Insurance Company ("the Insurers"). Once again Wabco has prevailed, despite the novelty of the remedy sought.

The facts under which GCC was held liable to Wabco were described in the previous opinion and need only brief repetition here. GCC undertook the shipment of four motor graders from New York to Beirut in late 1975. GCC put the graders ashore at Piraeus, Greece, because of the civil unrest in Beirut, and then later made delivery to Beirut. The graders were there seized from a warehouse and lost. Judgment was entered for Wabco for $259,841.65 plus interest. It is not contested that the Insurers issued a "Broad Form Deviation Legal Liability" insurance policy to GCC which was in effect at the time of the events which were the subject of the earlier opinion. The policy protected against ". . . liability to cargo . . . by reason of [certain named events resulting in loss to cargo as set forth in the policy]." Wabco has initiated this special proceeding under Fed.R.Civ.P. 69(a) and N.Y. CPLR § 5201, claiming that the obligation of the Insurers is a debt—"a cause of action which could be assigned or transferred accruing *within* or *without* the state"—under *id.* § 5201(a).

The Insurers have resisted this proceeding on three grounds: first, that their obligation, whatever it may be, is not a "debt"; second, that § 167 of the New York Insurance Law precludes recovery; and third, that in any case the policy does not cover the loss which is the basis of Wabco's present claim. The memoranda of the parties demonstrate that there is no direct controlling precedent and that metaphysical issues, such as the definitions of "debt" and "cargo," and the distinction between procedural and substantive legislation are presented.

The Insurers quote the following section from Professor Siegel's Practice Commentaries to the CPLR, McKinney's Cons. Laws of New York, Vol. 7B p. 49 *et seq.* at p. 50, on the interpretation of the section in question:

> Clearly the wisest treatment of this provision is that offered by the Court of Appeals in the Abcko case in 1976 [1] . . . in which the economic realities of a situation are permitted to rule the technical language of CPLR 5201.

---

**1.** *Abcko Industries, Inc. v. Apple Films, Inc.,* 39 N.Y.2d 670, 385 N.Y.S.2d 511, 350 N.E.2d 899 (1976). *See* Practice Commentary to the CPLR, *supra,* Vol. 7B, C 5201:5 at 53–54.

No authorities have dealt with marine insurance on this issue, but the economic realities would seem to dictate that such a judgment creditor should obtain a determination of his rights, whether or not the policy benefits him, as soon and as directly as possible.

The closest precedent cited under New York law is *Baumgold Bros. Inc. v. Schwarzschild Bros., Inc.*, 276 A.D. 158, 93 N.Y.S.2d 658 (1st Dep't 1949), *aff'd.* 302 N.Y. 628, 97 N.E.2d 357 (1951) in which the plaintiff, a jewelry wholesaler, sought successfully to obtain a warrant of attachment on an insurance policy against loss. The defendant's premises having been burglarized and jewelry, including some belonging to plaintiff, lost. The court stated:

> The contract obligation of the insurance company was created by its promise to pay on the happening of the contingency covered (which concededly has occurred), although proof of loss and indeed other steps within the insured's volition are required before insured can collect.

93 N.Y.S.2d at 660.

> On the facts herein disclosed we hold that as the loss had occurred while the policy was in effect and notice of loss had been given and received, the promise to pay was no longer contingent but a definite liability subject, of course, to defenses.

*Id.*, 93 N.Y.S.2d at 661–62.

In *Ahmed v. American S.S. Owners Mutual Protection & Indemnity Ass'n., Inc.*, 444 F.Supp. 569 (N.D.Cal.1978), a default judgment was obtained on a personal injury suffered by plaintiff, who then sought to reach defendants' insurers. The District Court held that New York common law barred a recovery on an indemnity insurance policy and that the exception to New York Insurance Law § 167 for marine insurance policies barred recovery against the insurance company under that section. The court also relied on *Cucurillo v. American S.S. Owners Mutual Protection & Indemnity Ass'n., Inc.*, 1969 A.M.C. 2334 (Sup.Ct.N.Y.Cty.1969) which barred a recovery, such as is sought here, under a marine indemnity policy. These decisions concern indemnity policies, on which a "debt" does not arise until the insured has actually paid damages, *see, e. g. Ahmed, supra*, at 571, and do not confront the CPLR § 5201(a) issue presented here.

As *Baumgold, supra*, appears to state New York law, *see Guercio v. Hertz*, 40 N.Y.2d 680, 686, 389 N.Y.S.2d 568, 573, 358 N.E.2d 261, 265 (1976); *see also Seafood Imports, Inc. v. A. J. Cunningham Packing Corp.*, 405 F.Supp. 5 (S.D.N.Y.1975); N.Y. CPLR § 6202; Practice Commentaries, *supra*, C5201:6, :7 at 57–59,[2] the question is presented as to whether the exemption for marine insurance in § 167 of the Insurance Law governs.

Section 167, in derogation of the common law, permits a direct action by one suffering injury to person or property against the defendant's insurer, certain policies being excluded—including the policy in issue here. *See* § 167(4). Yet there is no demonstration in logic which requires the limitation of the right of such a plaintiff proceeding as a judgment creditor to reach a marine liability policy under CPLR § 5201(a). None of the cases cited by the Insurers require such a result. *Cucurillo*, and *Ahmed, supra*, as indicated, involved indemnity policies. There is no reason why the exception carved out in § 167(4) to the new right of action created in that section of the Insurance Law applies equally to bar the assertion of a right previously existing under the predecessor to CPLR § 5201(a).

The policy in effect covered cargo shipped, carried, or discharged by GCC. The latter's liability arose, it has been pre-

**2.** *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) respectively restricted and overruled the jurisdictional quasi-in-rem attachment doctrine established in *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).

However, neither decision disapproved the limited holding of *Seider* and other such cases recognizing the obligation of a defendant's insurer as an attachable or garnishable debt. *See Rush v. Savchuk, supra*, 100 S.Ct. at 577, n.14.

viously held, because GCC failed to comply with the bill of lading, became a bailee and inadvertantly converted the goods when the graders were shipped and delivered to Beirut and were there seized and lost. True, GCC's liability arose from its unauthorized activity in its bailee status, but cargo is cargo, however it is loaded on board or discharged. If the language of an insurance policy is susceptible to more than one interpretation, it is to be construed against the insurance company; if a policy can be reasonably construed in favor of the insured, he is entitled to recover. *Champion Int'l Corp. v. Continental Casualty Co.*, 400 F.Supp. 978, 980–81 (S.D.N.Y.1975), *aff'd*, 546 F.2d 502 (2d Cir. 1976); *Sincoff v. Liberty Mutual Fire Ins. Co.*, 11 N.Y.2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899 (1962); *Hartol Products v. Prudential Insurance*, 290 N.Y. 44, 49, 47 N.E.2d 687 (1943). The policy of the Insurers, reasonably construed, is intended by its terms to cover all the activities relating to cargo and does not by its terms restrict the coverage to handling goods said to be cargo as a consequence of conditions established by an appropriate bill of lading. The liability of the insured while dealing with the goods is the subject of the insurance. That liability will not be restricted by a narrow definition of "cargo" to exclude this claimant because the liability arose when the goods were no longer under a proper bill of lading. The authorities cited by the Insurers do not compel a different result. Wabco is entitled to recover against the Insurers.

Wabco's motion to enforce and execute upon its judgment against GCC by special proceeding against the Insurers is granted. Submit judgment on notice within ten (10) days.

IT IS SO ORDERED.