**McCORMICK & COMPANY, INC.,**
**Plaintiff–Appellee,**

v.

**EMPIRE INSURANCE GROUP, Allcity Insurance Company, Empire Mutual Insurance Company, Defendants–Appellants.**

No. 1332, Docket 88–7259.

United States Court of Appeals,
Second Circuit.

Argued July 19, 1988.
Decided June 6, 1989.

**28**

John P. D'Ambrosio, Elmsford, N.Y. (John P. D'Ambrosio, P.C., Elmsford, N.Y.), for plaintiff-appellee.

Robert A. Lubitz, New York City, for defendants-appellants.

Before ALTIMARI and MAHONEY, Circuit Judges, and DEARIE,* District Judge.

MAHONEY, Circuit Judge:

Defendants-appellants Empire Insurance Group, Allcity Insurance Company and Empire Mutual Insurance Company (collectively "Empire") appeal from a summary judgment entered in the United States District Court for the Southern District of New York, Charles L. Brieant, *Chief Judge*, in favor of plaintiff-appellee McCormick & Company, Inc. ("McCormick"). 690 F.Supp. 1212 (S.D.N.Y.1988).

This diversity action, governed by New York law, was brought by McCormick seeking to enforce a judgment previously obtained against Jay Storage & Packing Corp. ("Jay Storage") for reimbursement for 290 bags of McCormick's pepper that was lost while stored in Jay Storage's warehouse. McCormick brings this action under New York Insurance Law Section 3420(a)(2) (McKinney 1985) against Empire, which had issued an insurance policy to Jay Storage insuring against liability incurred by Jay Storage as a warehouseman or bailee. Section 3420(a)(2) provides in sub-

stance for a direct action by a judgment creditor against the debtor's insurer.

Empire disclaimed any coverage, relying on a clause in the insurance policy that excluded from coverage "[u]nexplained loss" or "mysterious disappearance." The district court ruled that the exclusionary clause relied on by Empire was ambiguous, because it could be read to exclude only such loss or disappearance disclosed on taking inventory, and therefore must be construed against the insurer and in favor of the insured. We agree, and accordingly affirm the summary judgment entered in favor of McCormick.

*Background*

On May 16, 1984, Jay Storage received from Jantzen & Deeke, Inc. 430 bags of black pepper for storage in its warehouse in Brooklyn, New York. On August 21, 1984, Jantzen & Deeke sold the pepper to McCormick, a dealer in spices. When McCormick sent a truck to claim a portion of the pepper on February 15, 1985, Jay Storage could not locate 290 bags of the pepper. These missing bags of pepper have never been found, and no party to this action has offered any explanation for their loss. Empire submitted affidavits in support of its motion for summary judgment below that tended to rule out burglary as a valid explanation for the loss.

After discovering that the pepper was lost, McCormick made a claim against Jay Storage and Empire, but no payment was forthcoming. McCormick thereafter sued Jay Storage in the United States District Court for the Southern District of New York, and was granted summary judgment in the amount of $68,989.36, representing damages plus prejudgment interest.[1]

Notice of the judgment was served upon Jay Storage and Empire. After thirty days passed with no part of the judgment being paid, McCormick commenced the instant action against Empire under N.Y.Ins. Law

---

* The Hon. Raymond J. Dearie, United States District Judge for the Eastern District of New York, sitting by designation.

1. Aetna Casualty and Surety Company brought suit as subrogee of McCormick, and Empire *conducted the defense in behalf of its assured,* Jay Storage, while reserving the right to disclaim coverage under its insurance policy.

§ 3420(a)(2) (McKinney 1985).[2] Section 3420(a)(2) provides for a direct action by a judgment creditor against the debtor's insurer. Under the statute, the creditor's rights are no greater or less than those of the insured debtor, and recovery cannot exceed the policy limits. *Id.* Thus, the judgment creditor, here McCormick, is placed in the shoes of the insured, Jay Storage, in this action against Jay Storage's insurer, Empire.

Both parties agree that Empire provided Jay Storage with "warehousemen's legal liability insurance" which was in full force and effect during the period in which the loss took place. McCormick based its motion for summary judgment upon section 1(a)(1) of the policy, in which Empire agreed:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay by reason of liability imposed upon him as a warehouseman or bailee for loss or destruction of or damage to personal property of others contained in the premises hereinafter specified, occurring while this policy remains in full force and effect.

Empire opposed McCormick's motion and made its own motion for summary judgment, based upon the following exclusionary clause contained in section 3(1) of the insurance policy:

> Insurance provided under this policy shall not apply as respects any liability or expense for: ... (1) Unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory.

Empire contended that since neither Jay Storage nor McCormick could explain how the pepper was lost, the loss was an "[u]nexplained loss" or "mysterious disappearance" specifically excluded from coverage by section 3(1) of the insurance policy.

In granting summary judgment for McCormick, the district court concluded that the exclusionary clause was ambiguous. Specifically, it could be read (1) to exclude *any* "unexplained loss" or "mysterious disappearance" from coverage; or (2) that the phrases "unexplained loss," "mysterious disappearance," and "loss or shortage" were all modified by the phrase "disclosed on taking inventory," thereby excluding from coverage only losses, disappearances or shortages thus disclosed. Following New York law, the court resolved the ambiguity in favor of the insured, and held that since the loss in issue was not discovered upon the taking of inventory, it was covered by the policy.

On March 7, 1988, judgment was entered for McCormick in the amount of $74,267.06, representing the prior judgment against Jay Storage plus prejudgment interest, together with costs. This appeal followed.

### Discussion

■ McCormick's statutory right to maintain this action is coextensive with, though not exceeding, that which Empire's insured, Jay Storage, would have had if it had paid the initial judgment and sued for indemnity under the policy. *See Jones v. Zurich General Accident & Liab. Ins. Co.,* 121 F.2d 761, 764 (2d Cir.1941); N.Y.Ins. Law § 3420(a)(2) (McKinney 1985): Accordingly, in order to prevail, McCormick must establish that Empire is liable to Jay Storage under the insurance policy.

Under the insurance policy, Empire promised to pay Jay Storage "all sums" that Jay Storage became legally obligated to pay by reason of liability imposed upon it as a warehouseman. It is clear that McCormick's judgment against Jay Storage, which McCormick is now seeking to enforce, is a legal liability imposed upon Jay Storage as a warehouseman. Under New York law:

**2.** N.Y.Ins. Law § 3420(a)(2) specifies that:

> in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of [a] policy or contract shall remain unsatisfied at the expiration of thirty days from the serv-

> ing of notice of entry of judgment upon ... the insured, and upon the insurer, then an action may ... be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

Once the insured shows that a [covered] loss has occurred, the insurer shoulders the burden of demonstrating that the loss claimed is excluded expressly from coverage under the policy terms. *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 999 (2d Cir.1974). Exclusionary clauses are given the interpretation most beneficial to the insured. *See National Screen Service Corp. v. United States Fidelity & Guaranty Co.*, 364 F.2d 275, 279 (2d Cir.), *cert. denied*, 385 U.S. 958, 87 S.Ct. 394, 17 L.Ed.2d 304 (1966).

*M.H. Lipiner & Son, Inc. v. The Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir.1989).

■ A term in an insurance contract that is reasonably and fairly susceptible of more than one meaning is said to be ambiguous. *See Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d Cir.1987); *see also Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386, 391, 183 N.E.2d 899, 901, 230 N.Y.S.2d 13, 15 (1962). Moreover, "[w]ell recognized is the general rule that ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause." *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 353, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 354 (1978) (citing *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 314 N.E.2d 37, 39, 357 N.Y.S.2d 705, 708 (1974)); *see Sincoff*, 11 N.Y.2d at 390, 183 N.E.2d at 901, 230 N.Y.S.2d at 15.

■ Empire contends that the district court erred in its conclusion that the exclusionary clause is ambiguous. Empire claims that the exclusionary clause, rather than being ambiguous, clearly relates to two distinct situations: (1) unexplained loss or mysterious disappearance; or (2) loss or shortage disclosed on taking inventory. Empire contends that the only reasonable interpretation of the exclusionary clause is that it excludes from coverage any loss that is unexplained or mysterious, regardless of whether the loss was discovered on taking inventory. We disagree, and hold that the district court did not err in finding

that the exclusionary clause was ambiguous.

The well established New York rule for all types of insurance cases is that:

it is not sufficient for [insurers] to offer a reasonable interpretation under which the loss is excluded; they must demonstrate that an interpretation favoring them is the only reasonable reading of at least one of the relevant terms of exclusion.

*Pan Am. World Airways v. Aetna Casualty & Sur. Co.*, 505 F.2d 989, 1000 (2d Cir.1974) (citing *Sincoff*, 11 N.Y.2d at 390, 183 N.E.2d at 901, 230 N.Y.S.2d at 15). The district court, while recognizing that Empire's interpretation of the exclusionary clause was reasonable, concluded that another interpretation, one which favored the insured, could also be given to the clause, and therefore the clause was ambiguous. Specifically, the district court concluded that the exclusionary clause could also be read so that the phrases "[u]nexplained loss" and "mysterious disappearance" were modified by the phrase "disclosed on taking inventory." Under this interpretation, the exclusion would apply only to losses, disappearances or shortages disclosed on taking inventory.

In *Van Dutch Products Corp. v. Zurich Ins. Co.*, 67 A.D.2d 844, 413 N.Y.S.2d 8 (1st Dep't 1979), a case which considered the identical exclusionary clause in issue here, the court considered "the rationale of such an exclusionary clause as protective of insurers against claims based on erroneous or falsified inventories." *Id.* at 845, 413 N.Y.S.2d at 9 (citing *Dunlop Tire & Rubber Corp. v. Fidelity Co. of Maryland*, 479 F.2d 1243 (2d Cir.1973)). Furthermore, the *Van Dutch* court went on to make clear that "[t]he words respecting inventory are given meaning by the associated words 'unexplained' and 'mysterious.'" *Id.* at 845, 413 N.Y.S.2d at 9.

Similarly, in *Balogh v. Jewelers Mut. Ins. Co.*, 167 F.Supp. 763 (S.D.Fla.1958), *aff'd* 272 F.2d 889 (5th Cir.1959), the court interpreted an almost identical exclusionary

clause[3] as follows:

> It would appear that the phrase "disclosed on taking inventory" not being set off by commas, was intended to modify disappearance and loss as well as shortage. In fact the whole exception seems to concern itself with losses, disappearances or shortages disclosed upon the taking of inventory. At least it is equally susceptible of such an interpretation and the ambiguity is to be resolved against the party drawing the instrument.

*Id.* 167 F.Supp. at 770.

Empire relies heavily upon *Betty v. Liverpool & London & Globe Ins. Co.,* 310 F.2d 308 (4th Cir.1962). This case, however, involved a significantly different exclusionary clause which precluded recovery for "[u]nexplained loss or mysterious disappearance of property (except property in the custody of carriers or bailees for hire); or loss or shortage of property disclosed on taking inventory." 310 F.2d at 308–09. Unlike the operative clause here, there appears to be no rational construction of the language employed in *Betty* which would link the phrases "[u]nexplained loss" or "mysterious disappearance" to the modifier "disclosed on taking inventory." Furthermore, the issue addressed in *Betty,* whether all losses discovered on taking inventory were excluded from coverage, has no relevance to the instant case.

Empire also invokes *Atlantic Lines v. American Motorists Ins. Co.,* 547 F.2d 11 (2d Cir.1976). There the district court ruled that an insured was not covered for a loss under an "all risks" insurance policy "because of [the insured's] inability to establish the cause of the loss." *Id.* at 12. This court reversed, holding that an "all risks" insurance policy covers losses that are unexplained or the result of a mysterious disappearance, and that it was not necessary for the insured to establish how the loss occurred. In support of its holding, the court stated:

> Carriers which do not wish to insure against this broad risk customarily incorporate an exclusionary clause in their policies exempting from coverage "unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory."

*Id.* at 13.

This dictum, which simply quotes the customary language of the clause here in litigation[4] without any elaboration or attempt at definition, does nothing to establish the breadth or scope of the clause, which was obviously not in issue in *Atlantic Lines.* Further, we note that the loss in *Atlantic Lines,* unlike here, was apparently discovered in the course of an inventory. *See id.* at 12.

■ In sum, we agree with the district court that the contested exclusionary clause is ambiguous, and must therefore, under New York law, be construed in McCormick's favor. This suffices to warrant affirmance of the judgment from which this appeal is taken. We note also, however, that there is considerable common sense in the district court's observation that:

> either the bailee warehouseman or its employee negligently released the pepper to a person not entitled; or the pepper is still there but lost in the caverns of the warehouse. Since pepper in its natural state does not sublimate,[5] no other possibility exists, so the disappearance, while unsolved, is hardly mysterious. Rather, it is just the kind of loss against which the bailee probably intended to insure.

Having concluded that the district court correctly held that the loss was covered under the policy, it is unnecessary to consider McCormick's further contentions based upon waiver and estoppel.

---

**3.** The difference is that the clause construed in *Balogh* did not have a comma after the word "disappearance." 167 F.Supp. at 770.

**4.** The *Atlantic* version of the clause is the same as the *Balogh* version, with no comma after "disappearance." *See supra* note 3.

**5.** Or, as McCormick colorfully suggested in its brief, "Twenty-two (22) tons of bagged pepper did not go to pepper heaven." First amendment considerations preclude our embarking upon this theological inquiry.

*Conclusion*

The judgment of the district court is affirmed.