JjNORRIS, Chief Judge.
Appellant, Christ Episcopal Church of Bastrop, appeals an adverse ruling of the Bastrop City Court finding that property damage caused to its pipe organ by mice and rats is excepted from coverage by a vermin exclusion of the property insurance policy issued by appellee, Church Insurance Company. For the following reasons, we affirm.

Facts

In December 1996, members of the Christ Episcopal Church of Bastrop (“Episcopal”) discovered that their Wicks pipe organ was not working properly and called the manufacturer to investigate the problem. During a June 1997 service call, a representative of Wicks discovered that an infestation of rats and mice had caused damage to the organ, including corrosion of certain parts and chewed interior electrical cables. Wicks estimated the repair costs at $8,941.00. Thereafter, Episcopal filed a claim with its property and liability insurance carrier, Church Insurance Company (“Church Insurance”), asserting coverage under the buildings and contents provisions of the policy issued to Episcopal.
In October 1997, Church Insurance denied coverage contending that rats and mice are “vermin” and that damage cause by “vermin” is specifically excluded by the insurance policy provided to Episcopal. The insurer based its decision on a special provision of the policy which excluded from coverage any loss or damage to “organs, carillons, chimes, bells and other musical instruments” caused by:
wear and tear, deterioration, vermin, termites or other insects, inherent or latent defect, or damage sustained due to and resulting from any repairing, restoration or retouching process, (emphasis added)
In the meantime, needing the organ operable for an upcoming hundredth anniversary celebration, the church made temporary repairs to the organ at a cost of $2,285.00.
pin December 1997, Episcopal filed the instant suit in Bastrop City Court seeking coverage under the policy as well as statutory penalties and attorney fees under La. R.S. 22:658 for arbitrary and capricious failure to make timely payment. Thereafter, the insurer filed a motion for summary judgment on the coverage issue seeking a declaration that rats and mice are “vermin” under the exclusion. In response, Episcopal filed its own request for summary judgment on the coverage issue as well as on the amount of damages and penalties and attorney fees.
After a hearing at which the parties stipulated that the damage to the organ was cause by a rat and mouse infestation, the trial court issued detailed reasons on July 31, 1998 and granted the ■ insurer’s motion for summary judgment. The court concluded that rats and mice were “vermin” within the meaning of Church Insurance’s exclusion and that the loss was not covered under the policy. From that ruling granting the insurer’s summary judgment dismissing the suit and denying the church’s own motion for summary judgment, Episcopal now appeals asserting several assignments of error.

*1073
Applicable Law

Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. Art. 966 C(l). The burden of proof remains with the mover. Art. 966 C(2). Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court’s grant of the judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152.
|sThe applicable principles regarding the construction of insurance polices were concisely summarized by the supreme court in Ledbetter v. Concord General Corp., 95-0809, p. 3 (La. 1/6/96), 665 So.2d 1166, 1169:
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. Civ. Code art.2047; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94); 630 So.2d 759, 763. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Pareti v. Sentry Indemnity Co., 536 So.2d 417, 420 (La.1988).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). However, the rule of strict construction does not “authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.” Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939). Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, 1183.
See also, Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736; Crigler v. Crigler, 28,085 (La.App.2d Cir.4/3/96), 671 So.2d 1199, writs denied, 96-1092, 96-1148 (La.6/7/96), 674 So.2d 968.

Discussion

The main question raised by Episcopal on appeal is whether the damage done by the rats and mice to the church organ is excluded from coverage under the specific exclusion of Church Insurance’s policy for damage done by vermin. Agreeing with the thoughtful and thorough reasons of the trial court, we find that the exclusion is applicable to the facts of the present case.
The issue of what types of damages are excluded under the “vermin” exclusion provision of a property damage insurance policy is primarily a res nova 14question in Louisiana. While Marks v. Trinity Universal Ins. Co., 531 So.2d 516 (La.App. 2d Cir.1988), cited by both parties, mentioned the problem of applying the “vermin” exclusion as it related to damage done by a raccoon, the court was not called to interpret the provision.[1] Nonetheless, the *1074 question has arisen in several other jurisdictions regarding damage cause by animals other than rats. In each case, the courts determined that whether a particular creature is clearly or unambiguously vermin is a case-by-case inquiry turning upon the generally understood meaning of the term. See, Jones v. American Economy Ins. Co., 672 S.W.2d 879 (Tex.App. 5th Dist.1984) (racoons); Umanoff v. Nationwide Mut. Fire Ins., 110 Misc.2d 474, 442 N.Y.S. 2d 892 (N.Y.City Civ.Ct.1981) (racoons); Sincoff v. Liberty Mut. Fire Ins. Co., 11 N.Y.2d 386, 183 N.E.2d 899, 230 N.Y.S.2d 13 (1962) (carpet beetles); North British & Mercantile Ins. Co. v. Mercer, 211 Ga. 161, 84 S.E.2d 570 (1954) (squirrels). No court has directly addressed the issue of whether rats and mice are considered to be “vermin.”
Looking to the policy in question, the word “vermin” is not specifically defined anywhere in the policy, and we are unaware of any established meaning in the law of insurance. Therefore, we must determine whether the term, in its plain and ordinary sense, includes rats and mice. To determine the scope of the term, we turn, as did the trial court, to the various dictionary definitions. See, ie., Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759; Sharff v. Ohio Cas. Ins. Co., 605 So.2d 657 (La.App. 2d Cir.), writ denied, 608 So.2d 196 (La.1992). Webster’s Revised Unabridged Dictionary (G. & C. Merriam Co., 1913) defines vermin as:
Is2. A noxious or mischievous animal; especially, noxious little animals or insects, collectively, as squirrels, rats, mice, flies, lice, bugs, etc. (emphasis added).
That definition was changed little from the one found in Webster’s first dictionary, The American Dictionary of the English Language (Webster, 1828) which also listed rats and mice as being “vermin.” More recently, the American Heritage Dictionary of the English Language (Houghton Mifflin Co., 2d college ed.1976), defines vermin as:
1. Any of various small animals or insects that are destructive, annoying, or injurious to health, cockroaches or rats. (emphasis added).
The Random House Dictionary of the English Language, Unabridged (Random House, 2d ed.1987), defines vermin as:
1. Noxious, objectionable or disgusting animals collectively, esp. those of small size that appear commonly and are difficult to control, as flies, lice, bedbugs, cockroaches, mice, and rats, (emphasis added).
Indeed, these references constitute a mere sampling of those which include rats and/or mice as part of the definition of “vermin.”[2]
Equally important, a review of the use of the term “vermin” in context also shows that it is generally accepted to include rats and mice. A review of the Oxford English Dictionary (Oxford Univ. Press, 2d ed.1991) shows that the term “vermin” as it has been used regularly over the centuries, starting at least in 1513, has been accepted to include rats and mice. Additionally, on at least one occasion, our supreme court has referred to rats as “vermin.” Pierson v. Times-Picayune Pub. Co., 148 La. 817, 88 So. 77 (1921), referencing rats as being “vermin of that description” in observing rat infestations to have been a common problem in New Orleans *1075 at one time. More recently, in Evangeline Parish Police Jury v. Deshotel, 556 So.2d 1007 (La.App. 3d Cir.1990), the court referenced a local nuisance ordinance that prohibits “[a]ny condition which provided harborage for rats, mice, snakes, or other vermin.” Clearly, these collective sources show that those creatures that are ordinarily referred to as “vermin” have long been understood to include rats and mice. Thus, as relating to mice and rats, we find the term to be unambiguous.
Regarding the various other cases which find the term “vermin” to be ambiguous and which have been heavily relied upon by Episcopal, we find them to be clearly distinguishable on their facts. Each of. those cases dealt with animals and creatures other than rats and mice and which are not universally recognized as “destructive, annoying, or injurious to health” or “noxious, objectionable or disgusting.” Cf. Jones v. American Economy Ins. Co., supra (racoons); Umanoff v. Nationwide Mut. Fire Ins., supra (racoons); Sincoff v. Liberty Mut. Fire Ins. Co., supra (carpet beetles); North British & Mercantile Ins. Co. v. Mercer, supra (squirrels). In fact, in North British & Mercantile Ins. Co. v. Mercer, supra, the Georgia Supreme Court concluded that the term “vermin” clearly included rats and mice while finding it ambiguous as it related to squirrels.
The determination of whether a contract is clear or ambiguous is a question of law. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., supra. Therefore, having determined that rats and mice are unambiguously included under the ambit of the term vermin in the exclusion provision of Church Insurance’s policy with Episcopal, we find that the policy did not provide coverage for the damage done to Episcopal’s pipe organ. The trial court correctly granted Church Insurance’s motion for summary judgment on the issue of coverage.[3]

_J¿Conclusion

For the reasons assigned, the judgment of the trial court is affirmed. Costs are assessed to appellant, Christ Episcopal Church of Bastrop.
AFFIRMED.
BROWN, J., dissents with written reasons.

. In Marks, supra, this court was called upon to determine whether the insurer had acted arbitrarily, capriciously, or without probable cause in failing to make payment to the insured in a timely manner under La. R.S. 22:658 when they relied upon the "vermin” *1074 exclusion to deny coverage. Therein, as noted by the court, the parties had conceded by agreement that the exclusion was inapplicable after the district court had so concluded based on Jones v. American Economy Ins. Co., 672 S.W.2d 879 (Tex.App.-Dallas 5th Dist. 1984), a Texas case involving damage caused by a squirrel. Thus, the only issue before this court was whether the insurer should have been assessed penalties and attorney fees.

. We note that the trial court’s written reasons included six separate dictionary references that included rats and/or mice as part of their definition of "vermin,” including a college zoology dictionary.

. Having concluded that no coverage was provided for the claimed damages, we need not address Episcopal's other assignments of error relative to the amount of damages nor penalties and attorney fees.