**Jordan HABER, Debbie Haber, Plaintiffs–Appellees,**

v.

**ST. PAUL GUARDIAN INSURANCE COMPANY, Defendant– Appellant.**

**Nos. 207, Docket 97–7169.**

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1997.

Decided Feb. 6, 1998.

---

Donald Joseph Cayea, Klepner & Cayea, New York City, for Plaintiffs–Appellees.

Keith L. Flicker, Flicker, Garelick & Associates, New York City, for Defendant–Appellant.

Before: PARKER, ALTIMARI and KEITH*, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiffs-appellees Dr. Jordan Haber and Debbie Haber ("the Habers") filed a declaratory-judgment action against defendant-appellant St. Paul Guardian Insurance Company ("St. Paul") seeking coverage under their homeowner's policy (the "Policy") for their liability for ·workers' compensation benefits for Florine Netus ("Netus"), who was injured during the course of her employment as the Habers' live-in housekeeper. The Policy contained a so-called "HO–90 Endorsement" (the "Endorsement"), the meaning of which is the focus of this dispute. The United States District Court for the Southern District of New York (Sotomayor, J.) determined that an ambiguity in the Endorsement to the Policy should be construed against St. Paul, and accordingly ordered St. Paul to provide coverage. For the reasons discussed below, we affirm.

## BACKGROUND

Before the Habers moved into their new house, they contacted Mr. Larry Liquori, their insurance broker, to obtain insurance. Liquori was a broker with the Jacka–Liquori Agency, which was an agent of St. Paul. Dr. Haber and Liquori met twice in January 1990 to discuss the Habers' insurance needs. They first met in Liquori's office, where Dr. Haber noted his need for extra coverage

* Hon. Damon J. Keith, *Judge*, United States Court of Appeals for the Sixth Circuit, sitting by designation.

since his new house would be substantially larger than his old one. This meeting prompted Liquori to visit the Habers' new house. During that visit, Dr. Haber told Liquori about his live-in housekeeper who would be working five days a week. He testified, "I showed him the house. He walked through the house, he saw where the housekeeper was going to be living, the room. He knew it all.... He saw every room including [Netus's] room." According to Dr. Haber, Liquori assured him after inspecting the house that "I'm going to cover you." On February 6, 1990, St. Paul issued the Policy to the Habers.

On May 25, 1993, a fire broke out in the Habers' home when Netus was sterilizing baby bottle nipples in a strainer on the stove. While attempting to extinguish the fire, the burning strainer fell on one of Netus's legs, causing severe burns. Netus received substantial medical treatment for her injuries, and she subsequently filed a workers' compensation benefits claim against the Habers. Her medical expenses totaled some $150,000.

On August 21, 1993, St. Paul filed a Notice of Controversion, denying coverage under the Policy. Facing Netus's claim and potential liability, the Habers filed this declaratory judgment action against St. Paul in district court, seeking an order requiring St. Paul to provide coverage under the terms of the Endorsement provided for in their Policy.

The Endorsement's heading reads "Workers' Compensation, Certain Residence Employees." The Endorsement defines "residence employees" as those who satisfy the following two conditions: (1) "engaged in regular employment of less than 40 hours per week"; and (2) "defined under New York workers' compensation law as an employee for whom workers' compensation benefits must be provided." Among other things, the Endorsement covers the Habers for "all damages for which [they are] legally liable because of bodily injury sustained by a covered residence employee." The key issue facing the district court was whether Netus was a covered "residence employee" under the terms of the Endorsement.

After a bench trial, in an oral opinion dated January 21, 1997, the district court determined that Netus was a "residence employee" under the terms of the Endorsement and that the Habers were therefore entitled to coverage. First, it found that Netus worked less than forty hours a week, which satisfied the first condition. Next, the court found that the terms of the second condition were ambiguous, warranting an examination of the interpretations of the Endorsement offered by the parties. The court concluded that the Habers' interpretation of the Endorsement—that it constituted a voluntary election of coverage for Netus—was the more reasonable interpretation, and that the second condition in the Endorsement had therefore been satisfied. The court rejected St. Paul's argument that the Habers' interpretation of the Endorsement was contrary to New York Ins. Law § 3420(j)(1), because it found that the language of section 3420(j)(1) was difficult to construe and was not as restrictive as St. Paul contended.

On appeal, St. Paul argues that (1) the district court erred in finding a voluntary election of coverage; (2) the district court erred in interpreting the Endorsement contrary to section 3420(j)(1); and (3) the district court's finding that Netus worked less than forty hours a week was clearly erroneous. We disagree.

## DISCUSSION

We must determine whether Netus's position with the Habers satisfied the two conditions of being a "residence employee" under the terms of the Endorsement. Regarding the second condition, both sides agree that under New York Workers' Compensation Law domestic employees such as Netus are generally not employees for whom workers' compensation benefits must be provided. See N.Y. Workers' Comp. Law § 2(4) (McKinney 1992). The parties also agree, however, that domestic employees can be brought within the class of workers for whom such benefits must be provided if an employer voluntarily elects to cover them. See id. §§ 3(1) (Group 19), 50. The central inquiry is whether, as the Habers maintain, the Endorsement constituted a voluntary election of coverage for Netus. If it does constitute

such coverage, then Netus would be an employee for whom benefits "must be provided" under the workers' compensation laws, which would satisfy the second condition of "residence employee" in the Endorsement.

St. Paul maintains that the Habers' interpretation of the Endorsement is contrary to the parties' intentions and violates New York Insurance Law § 3420(j)(1) (McKinney 1985), which requires homeowner's policies to contain such endorsements. It also contends that Netus worked more than 40 hours per week and that she therefore fails to meet the first condition of being a residence employee.

### A. Ambiguity Within and Meaning of the Endorsement

St. Paul contends that the Endorsement is unambiguous and that the district court's reading of the Endorsement is contrary to the intentions of the parties.

 Whether contract language is ambiguous is a question of law, which we review *de novo. See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir.1991). Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning. *Id.* "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *United States Fire Ins. Co. v. General Reins. Corp.,* 949 F.2d 569, 572 (2d Cir.1991). Once a contract is found to be ambiguous, a court must examine ambiguous terms "from the vantage point of the 'reasonable expectations and purposes of the ordinary [person],'" *In re: Prudential Lines, Inc.,* 170 B.R. 222, 233 (S.D.N.Y.1994) (citations omitted), and should consider extrinsic evidence of the parties' intentions. *See, e.g., United States Fire Ins. Co.,* 949 F.2d at 571. The district court's findings regarding the meaning of the ambiguous terms may not be disturbed unless they are clearly erroneous. *See In Time Prods., Ltd. v. Toy Biz, Inc.,* 38 F.3d 660, 665 (2d Cir. 1994). Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470

U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

### 1. Ambiguity

 The second condition of the Endorsement states that a residence employee is someone who is "defined under the New York Workers' Compensation Law as an employee for whom workers' compensation benefits must be provided." Although this condition seems clear on its face, a review of the workers' compensation laws is required to clarify its meaning. The Habers contend, and we agree, that the interplay between the Endorsement and New York Workers' Compensation Law creates a potential ambiguity in the Endorsement.

For example, one section of the workers' compensation laws requires that benefits be provided for "domestic workers" only if they work at least forty hours per week. *See* N.Y. Workers' Comp. Law § 3(1) (Group 12) (McKinney 1992). By inference, an employer is not required to provide benefits to domestic workers who work less than forty hours per week. Although domestic workers who work less than forty hours per week would satisfy the first condition of being a "residence employee" under the terms of the Endorsement, they would not satisfy the second condition, because under section 3(1) (Group 12) they are not employees for whom benefits must be provided.

Alternatively, section 3(1) (Group 19) provides that an employer may bring an employee, who is not otherwise required to be covered, within the coverage of workers' compensation law by "securing compensation to his employee ... in accordance with section fifty of this chapter." Section 50 explains that an employer may secure compensation for an employee

2. By insuring and keeping insured the payment of such compensation with any stock corporation, mutual corporation or reciprocal insurer authorized to transact the business of [workers'] compensation insurance in this state.

*Id.* § 50(2). In other words, a domestic worker who works less than forty hours a week may be categorized as an employee for whom workers' compensation benefits must

be provided if her employer has secured compensation for her pursuant to section 50. *See id.* § 2(4). Thus, one section of the workers' compensation laws indicates that a domestic employee who works less than 40 hours a week could not possibly be deemed a "residence employee" under the Endorsement, while another states that such an employee may be covered if her employer secures compensation for her.

The Habers contend that their purchase of the Policy containing the Endorsement effectively secured compensation for Netus, which made her an employee for whom benefits must be provided and which satisfies the second condition of being a residence employee.

The ambiguity in the Endorsement arises because it is unclear whether the second condition—whether Netus is an employee for whom benefits "must be provided"—is satisfied by the existence of the Endorsement itself. This interpretation of the Endorsement may be criticized as appearing circular. After all, why would an endorsement, which purports to cover only employees for whom benefits must be provided, also, by its very existence, provide a means for bringing other classes of employees within its coverage? However, because a review of the workers' compensation laws is necessary to define "employees for whom benefits must be provided," and because those laws define the provision in a way that would allow for an endorsement such as the one at issue here to bring an employee such as Netus within the purview of coverage, the Habers' interpretation of the Endorsement is reasonable and gives rise to an ambiguity. *See United States Fire Ins. Co.,* 949 F.2d at 572 ("a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading").

Although St. Paul did not concede this ambiguity, its only expert witness testified that the Endorsement is "very confusing." When Ms. Sandra Poplowski, a Personal Insurance Marketing Specialist employed by St. Paul, was asked in what instance would a residence employee be covered by the Endorsement, she responded: "[b]ased upon [the Endorsement], the wording of this, I

find it very confusing. I think an average layperson wouldn't really know what is covered here." She explained that the wording of the Endorsement and its meaning is confusing to "even those who are in the [insurance] industry." If an insurance expert cannot clearly explain the meaning of "residence employee," then surely reasonable minds could differ as to the meaning of the term. *See Collectors' Guild,* 930 F.2d at 1026. In sum, our review of the Endorsement and of Ms. Poplowski's testimony satisfies us that the district court did not err in finding that the Endorsement was ambiguous.

### 2. Intentions and Reasonable Expectations

We turn now to an examination of the parties' intentions. St. Paul maintains that it did not intend to provide coverage for workers' compensation benefits for employees such as Netus. St. Paul points to Dr. Haber's testimony that he did not consider Netus to be an employee, did not withhold any social security payments, and did not specifically request workers' compensation insurance for her. Ms. Poplowski explained St. Paul's intentions. She testified that St. Paul issued the Endorsement with its policies to comply with New York Insurance Law § 3420(j)(1), which requires homeowner's policies to include workers' compensation coverage to residence employees who work less than forty hours a week and who are statutorily entitled to such benefits. St. Paul's also points to practice commentaries and insurance industry bulletins regarding section 3420(j)(1), which indicate that endorsements added pursuant to that section do not constitute a voluntary election of coverage.

By contrast, the Habers maintain that they sought full coverage for their home, and that they relied on St. Paul's agent, Liquori, to provide the coverage they needed. Dr. Haber expressed this intention to Liquori and he showed the housekeeper's room to Liquori when he visited the Habers' home.

The district court credited Dr. Haber's testimony. However, the court determined that Dr. Haber did not specifically seek a policy containing workers' compensation cov-

erage. In short, the district court determined that the Habers did not have the specific intent to obtain a workers' compensation policy, but that they had a general intent to obtain full coverage for their potential liability. Nothing in the record suggests that these findings are clearly erroneous, and St. Paul does not challenge them as such.

The question becomes whether these findings as to the parties' intentions resolve the ambiguity in the Endorsement. Although St. Paul or the drafters of its policy may have intended to follow the dictates of New York Insurance Law § 3420(j)(1) and the sentiments reflected in industry literature, this type of evidence of an insurer's intentions is not conclusive. *See, e.g., Michigan Chem. Corp. v. Travelers Indem. Co.,* 530 F.Supp. 147, 153 (W.D.Mich.1982) ("the court must look more at ... the intent of the parties to the contract than to the intent of the drafters of the standard policy"), *rev'd on other grounds,* 728 F.2d 374 (6th Cir.1984).

Regarding the Habers' intentions, there is little doubt that when an individual notifies an insurer of its desire to obtain full coverage and of the existence of a live-in housekeeper, a court may infer an intention on the part of the individual to cover the employee. In *Caldwell v. Aetna Casualty and Surety Co.,* 107 N.J.Super. 456, 258 A.2d 900, 902 (1969), the court held that the trial court erred in dismissing an action in favor of the insurers without considering testimony which would have shed light on the insureds' intention to have workers' compensation coverage for their live-in housekeeper. The insurer "was told by the husband-assured that a full-time domestic would be living in the house and that the insurance should include 'everything (he) needed.'" *Id.* at 903. The court held that "[i]t is inferable from this, if believed, that when the assureds received the policy they thought they were covered for liability of any kind in respect of accidents to the domestic." *Id.* Here, as in *Caldwell,* Dr. Haber asked for full coverage and noted the existence of his live-in housekeeper.

We find that our review of the parties' intentions does not conclusively resolve the ambiguity in the Endorsement. Nonetheless, it raises the question of whether the Habers could have reasonably expected their homeowner's policy to cover their workers' compensation liability for Netus's injuries. Like many states, New York recognizes the "reasonable expectations doctrine." *See, e.g., Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.,* 60 N.Y.2d 390, 469 N.Y.S.2d 655, 658, 457 N.E.2d 761, 763–64 (1983). Under this doctrine, if an ambiguity arises that cannot be resolved by examining the parties' intentions, then the ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract. *See Fried v. North River Ins. Co.,* 710 F.2d 1022, 1025 (4th Cir.1983) (applying New York law); *Board of Educ. v. CNA Ins. Co.,* 647 F.Supp. 1495, 1503 (S.D.N.Y.1986).

A review of the language of the Endorsement reveals that the Habers could have reasonably expected the Endorsement to cover them for their liability under the workers' compensation laws arising from Netus's injuries. The Endorsement is entitled "Workers' Compensation, Certain Residence Employees." It provides that the insurer agrees "to pay on behalf ,of the insured all damages for which the insured is legally liable because of bodily injury sustained by a covered residence employee." It defines residence employees as those working less than forty hours per week and defined under New York Workers' Compensation Law as employees for whom benefits must be provided. When read in its entirety, and when coupled with the Habers' expectation to obtain full coverage from St. Paul, the Endorsement could certainly lead an average person to reasonably expect that he has the coverage now sought by the Habers.

The reasonable expectations doctrine is a corollary to the contra-insurer or contra-proferentem rule. That rule states that "where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer." *Liverpool & London & Globe Ins. Co. v. Kearney,* 180 U.S. 132, 136, 21 S.Ct. 326, 328, 45 L.Ed. 460 (1901). In *Matthews v. American Central Insurance Co.,* 154 N.Y. 449, 456–57, 48 N.E. 751 (1897), the New York Court of

Appeals explained that, because insurers generally prepare policies, "when the meaning is doubtful, it should be construed most favorably to the insured, who had nothing to do with the preparation thereof." Later cases have explained that "[i]t is fundamental that ambiguities in an insurance policy must be construed against the insurer." *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (1974). This rule gains added force when ambiguities are found in an exclusionary clause. *Id.* (citing *Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386, 230 N.Y.S.2d 13, 15–17, 183 N.E.2d 899, 902 (1962)). Indeed, once an ambiguity is found, "the insurer bears the heavy burden of demonstrating that it would be unreasonable for the average man reading the policy to construe it as the insured does and that its interpretation of the insurance policy provisions is the only construction that fairly could be placed on the policy." *Kenevan v. Empire Blue Cross & Blue Shield*, 791 F.Supp. 75, 79 (S.D.N.Y.1992) (internal quotations and citations omitted).

Applying these principles to the facts here, we accept the interpretation of the Endorsement offered by the Habers. While we hesitate to agree with the district court that the Haber's interpretation was the more reasonable one, we have determined that St. Paul has not met its burden of showing that it would be unreasonable for the average man reading the Endorsement to construe it as the Habers do and that its interpretation is the only one that could be fairly placed on the Endorsement. *Id.* Moreover, this result comports with the Habers' reasonable expectations in obtaining their homeowner's policy.

**B. Construction with New York Law**

▉ Notwithstanding the fact that the interpretation of the Endorsement accepted above was reached by applying well-established rules of contract interpretation, St. Paul argues that the interpretation violates or is inconsistent with New York law. Specifically, it contends that the Endorsement was added to their policies pursuant to New York Insurance Law § 3420(j)(1), which requires all comprehensive personal liability policies to provide "for coverage against liability ... which the policyholder may incur pursuant to the workers' compensation law, to an employee arising out of and in the course of employment of less than forty hours per week." The thrust of its argument is that this mandatory Endorsement cannot be construed as a voluntary election of coverage pursuant to New York Workers' Compensation Law sections 3(1)(Group 19) and 50, because section 3420(j)(1) expressly provides that

> [n]o one who purchases a policy providing comprehensive personal liability insurance shall be deemed to have elected to cover under the workers' compensation law any employee who is not required, under the provisions of such law, to be covered.

Relying on this language, St. Paul argues that to interpret the Endorsement in the Habers' policy as constituting a voluntary election of coverage violates section 3420(j)(1).

This Court will assume for the sake of argument that St. Paul added the Endorsement to its homeowner's policies to comply with section 3420(j)(1). What must be resolved, however, is whether the "shall not be deemed" language in section 3420(j)(1) limits the terms of the Endorsement or precludes this Court from accepting the interpretation of the Endorsement urged by the Habers and accepted by the district court.

St. Paul relies on practice commentaries and other materials that interpret workers' compensation laws to support its position that the district court's interpretation of the Endorsement violates section 3420(j)(1). The practice commentaries to section 3 of New York Workers' Compensation Law explain that section 3420(j)(1) provides coverage "for liability for the payment of any obligation under the Workers' Compensation Law for a limited group of employees." Martin Minkowitz, Practice Commentaries, N.Y. Workers' Comp. § 3 (McKinney 1992). This coverage was designed to "protect the homeowner from unexpected liability when the [Workers' Compensation] Board determined that a person, who the homeowner did not believe required coverage, is entitled to benefits." *Id.* Regarding the issue of

elective coverage, the commentaries state that "[t]his coverage does not constitute elective or voluntary coverage as provided in section 3(1)(Group 19).... Therefore, any person who is not required to be covered for workers' compensation benefits would not be deemed to be covered solely because of the existence of this comprehensive liability policy." *Id.*

St. Paul also cites Jack Piercy, President of the New York Compensation Insurance Policy Board, who interprets the law as not affording "voluntary or elective coverage for those persons or occupations already exempt under New York State Workers' Compensation Law." He explains that "part-time domestics and other employees can still be insured voluntarily, ... [and] the only means of providing coverage is by obtaining a standard workers' compensation policy."

Although the practice commentaries and Piercy's interpretation of section 3420(j)(1) suggest that the Endorsement does not constitute a voluntary election of coverage, New York courts have held that it may be inappropriate to consult a statute to clarify an ambiguous policy term, especially if it would contravene the reasonable expectations of an insured. For example, in *Insurance Company of North America v. Godwin*, 46 A.D.2d 154, 361 N.Y.S.2d 461 (N.Y.App.Div.1974), the court refused to apply the statutory definition of "motor vehicle" to an insurance policy. *Id.* at 464. The court explained that "we are here interpreting a policy of insurance, and [the insured] is entitled to have it construed as a contract and not necessarily according to the statutory definition." *Id.* at 464; *cf. Mostow v. State Farm Ins. Co.*, 88 N.Y.2d 321, 645 N.Y.S.2d 421, 423–24, 668 N.E.2d 392, 394–95 (1996). Rather than using the statute to interpret the ambiguous term, the court relied on the rule of contra-proferentem and construed the ambiguous term against the insurer.

Similarly, in *Mostow*, the Court of Appeals of New York interpreted an insurance policy containing an ambiguous endorsement. The endorsement provided coverage of $100,000 per person and up to $300,000 if two or more persons were injured. The question on appeal was whether an award of $190,000 to one injured person and $100,000 to another violated the policy's provision. The insurer urged the court to rely on section 3420(f)(2)(A) of New York Insurance Law, which clearly states that a total of $300,000 may be awarded "subject to" the $100,000 per person limit. However, because the insurance policy lacked the "subject to" language contained in section 3420, the court found that the policy was ambiguous and should be interpreted against the insurer.

The *Mostow* court determined that the interpretation urged by the insured was "not contrary to law." *Id.* at 423, 668 N.E.2d at 394. Even though the interpretation urged by the insured, and untimely accepted by the court, provided $90,000 more to the insured than section 3420 would have provided, the court found that it was lawful because section 3420(a) provides that a construction of the law that is "more favorable to the insured" is lawful. *Id.*

We need not decide here whether the New York Court of Appeals would similarly read 3420(a) into 3420(j) as it did with 3420(f). However, the rule of construction in 3420(a) is consistent with other rules of construction used by New York courts · which seek to protect insureds, such as ·contra-proferentem and the reasonable expectations doctrine. Accordingly, the logic of *Mostow* applies with equal force here, and this Court will not use section 3420(j)(1) to reject an interpretation of an ambiguous Endorsement that was accepted after applying well-established rules of contract law.

Finally, the *Mostow* court admonished that "this dilemma could have been avoided had the insurer simply drafted the policy to include the 'subject to' language employed in Insurance Law § 3420(f)(2)(A)." *Id.* at 424, 668 N.E.2d at 395. St. Paul did not clearly articulate in the Endorsement that the Endorsement itself does not constitute a voluntary election of coverage. St. Paul failed either to state that "the · Endorsement is subject to section 3420(j)(1)" or to employ the same limiting language used in section 3420(j)(1). If St. Paul sought to buttress its interpretation of the exclusionary language in the Endorsement with section 3420(j)(1), it should have used unambiguous language in

the Endorsement itself. For example, St. Paul could have stated in the Endorsement that it "does not constitute a voluntary election of coverage under New York Workers' Compensation Law."

In sum, we are not persuaded that the interpretation of the Endorsement accepted by the district court violates New York law, and we see no reason to depart from the well-established rules of contract interpretation discussed above.

## C. First Condition of Endorsement

█ Finally, St. Paul contends that the district court erred in finding that Netus worked less than forty hours a week and in concluding that she therefore satisfied the first condition of being a residence employee.

The district court heard conflicting testimony regarding how many hours per week Netus worked. On Tuesday mornings, Netus would travel from her apartment in Brooklyn to the Habers' house and stay with them through 7:45 a.m. on Sunday mornings when she would return to her apartment. Her duties were sporadic, but usually included varying amounts of cooking, cleaning, and childcare. Although some of her chores would begin at 8:00 a.m. and others would require her to work in the evening as late as 7:00 or 8:00 p.m., it is undisputed that she usually had free time during the day to attend church or to watch television. Netus testified that she usually worked more than forty hours per week, whereas Mrs. Haber testified that Netus worked much less than forty hours per week. However, the district court was most persuaded by Dr. Haber's testimony that Netus usually worked less than forty hours per week and that occasionally she worked more than forty hours. Based on this finding, the district court concluded that the first condition of the Endorsement had been satisfied.

Under Fed.R.Civ.P. 52(a), findings of fact made during a bench trial "shall not be set aside unless clearly erroneous." *See also Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Because there is ample evidence in the record to support the district court's finding that Netus generally worked less than forty hours per week, we conclude that the district court's finding that the first condition of the Endorsement was satisfied was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

PARKER, Circuit Judge, dissenting.

I believe that the district court erred in finding, as a matter of law, that plaintiffs-appellees Dr. and Mrs. Haber (the "Habers") voluntarily elected to provide Workers' Compensation coverage for a domestic helper, Florine Netus ("Netus") through the HO–90 Endorsement (the "Endorsement") to their homeowner's insurance policy with St. Paul Guardian ("St. Paul"). This finding is contrary to the explicit language of New York Insurance Law § 3240(j)(1). I would vacate the judgment of the district court on this point and remand for further proceedings. Therefore, I respectfully dissent.

Under New York law, which governs this diversity action, an insurance policy should be construed to give effect to the intentions of the parties as expressed in the unambiguous terms of policy. *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). "If the provisions are clear and unambiguous, courts are to enforce them as written." *Id.* The determination of whether a provision in an insurance contract is ambiguous is a question of law, reviewed *de novo* on appeal. *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir.1991).

If a court finds a provision in an insurance contract to be ambiguous, it should interpret all ambiguities in favor of the insured and against the insurer, as the maker of the contract. *Sylvan Beach,* 55 F.3d at 115. A provision in an insurance contract is ambiguous if it "is reasonably and fairly susceptible to more than one meaning." *McCormick & Co. v. Empire Ins. Group,* 878 F.2d 27, 30 (2d Cir.1989). Once a court finds a provision to be ambiguous, the insured's construction of that provision governs, unless the insurer can show: "(1) that it would be unreasonable

for the average man reading the policy [to construe it as the insured does] and (2) that its own construction [is] the only one that fairly could be placed on the policy." *Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386, 390, 183 N.E.2d 899, 901, 230 N.Y.S.2d 13, 16 (1962). Under these principles, and contrary to the Habers' assertion, the Endorsement is not ambiguous.

The Endorsement is entitled "Workers' Compensation, Certain Residence Employees." The use of the term "certain" immediately alerts the average person that some but not all residence employees will be covered under the Endorsement. Specifically, at issue in this case is the meaning and effect of the section of the Endorsement entitled "Who is Covered." This section defines the extent of coverage, which does not extend to all residence employees:

A covered residence employee under this endorsement is a residence employee who is both:

a. engaged in regular employment of less than 40 hours per week or is engaged in casual employment, and

b. defined under New York workers' compensation law as an employee for whom workers' compensation benefits *must* be provided. (Emphasis added.)

With regard to the first prong of this definition, the district court found that Netus worked less than forty hours per week. Because this finding of fact is not clearly erroneous, it must be upheld by this Court. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Hence, the first prong of the definition of a "covered residence employee" in the Endorsement is satisfied.

The question thus becomes whether the second prong of the Endorsement's definition of "covered residence employee" is satisfied. The Habers claim, and the majority opinion agrees, that the second prong is ambiguous.

Further, the majority interprets the second prong to be a voluntary election of workers' compensation coverage. In the first place, I cannot agree that the second prong is ambiguous and, secondly, even if it were, the interpretation which the majority concludes is reasonable, is to me anything but.

The Endorsement provides coverage for employees "for whom workers' compensation benefits must be provided." The majority acknowledges, as it must, that domestic workers such as Florine Netus (who was employed for less than forty hours per week) are not employees for whom workers' compensation benefits are generally required. Indeed, the Workers' Compensation Law ("WCL") specifically requires coverage to be provided for domestic workers who work "a minimum of forty hours per week." N.Y.Work.Comp.L. § 3(1), Group 12.

The majority sees an ambiguity in the language of the policy because another section of the law permits an employer to elect to bring an employee who is not required to be covered within coverage by voluntarily purchasing insurance which provides workers' compensation benefits.[1] The reasoning of the majority which creates ambiguity appears to be:

1) The policy provides coverage if the workers compensation law requires Netus to be covered.

2) The law doesn't specifically require coverage because Netus works less than forty hours per week.

3) The law permits employers to voluntarily elect coverage by purchasing workers' compensation insurance.

4) Once such coverage is elected to be purchased, the employee is entitled to benefits.

5) By purchasing this policy with its provision covering those who must be covered

---

**1.** Section 2, subparagraph 4 of the Workers' Compensation Law ("WCL") provides that the term "employee" "shall not include domestic servants except as provided in section three ... except where the employer has elected to bring such employees under the law by securing compensation in accordance with the terms of section fifty of this chapter." N.Y.Work.Comp.L. § 2(4). Section 50 of the WCL provides that an employer may secure compensation to his employees "[b]y insuring and keeping insured the payment of such compensation with any stock corporation, mutual corporation or reciprocal insurer authorized to transact the business of workmen's compensation insurance in [New York]." N.Y.Work.Comp.L. § 50(2).

under the law, the insured made such an election of coverage.

This logic is flawed for several reasons. First, there is no ambiguity in a scheme which provides coverage if the law requires it or if an election to cover is made. The issue is whether such an election was made. The district court specifically found that Haber didn't ask for workers' compensation coverage for Netus and did not have any specific intent to purchase it. In fact, Haber did not even treat her as an employee. These findings were not clearly erroneous. The general intention to purchase comprehensive homeowner's insurance is hardly sufficient to constitute an election to provide workers' compensation benefits.

Second, the reasoning is completely circular. The logic is that by the mere act of purchasing a policy which only covers those who *must* be covered by law, the insured automatically receives coverage for those who *may* be covered if the insured elects to do so. "May" becomes "must" without any indication of an election except the purchase of the policy.

Third, even if one sees an ambiguity here, which I do not, it is the intent of the parties which controls the interpretation of contracts. The only intent of the Habers as found by the trial court was a general intent to obtain comprehensive homeowner's insurance. As for St. Paul, it is impossible, in my view to infer that by including a provision in the policy that provided coverage if the coverage is required by law, it intended to further provide coverage *not* required by law. It is far more reasonable to conclude, as St. Paul contended (and its witness Ms. Poplawski testified) that the Endorsement was included to comply with New York Insurance Law § 3420(j)(1) which requires homeowners' policies to provide coverage for domestic employees who work less than forty hours per week if they, for some reason, become entitled to benefits under law.

Furthermore, there is a New York statute which directly addresses the issue of whether the Endorsement may be deemed an election of workers' compensation coverage. Section 3420(j)(1) of the Insurance Law provides:

Notwithstanding any other provision of this chapter or any other law to the contrary, every policy providing comprehensive personal liability insurance on a one, two, three or four family owner-occupied dwelling ... shall provide for coverage against liability for the payment of any obligation, which the policyholder may incur pursuant to the provision of the workers' compensation law, to an employee arising out of and in the course of employment if less than forty hours per week, in and about such residences of the policyholder in this state. *No one who purchases a policy providing comprehensive personal liability insurance [for the home] shall be deemed to have elected to cover under the workers' compensation law any employee who is not required, under the provisions of such law, to be covered.*

N.Y.Ins.L. § 3420(j)(1) (emphasis added).

St. Paul claims that the disputed language in the Endorsement's definition of "covered residence employee" is terminology used to satisfy the requirements of section 3240(j)(1). The Endorsement does indeed track the requirements laid out in section 3420(j)(1). Thus, the definition of "covered residence employee" is susceptible to only one meaning, is not ambiguous, and section 3420(j)(1) prevents the Endorsement from being deemed an election of workers' compensation coverage.

The practice commentary to section 3 of the WCL specifically addresses the application of section 3420(j) of the Insurance Law:

This coverage [required by § 3420(j) ] does not constitute elective or voluntary coverage as provided in Section 3(1), Group 19 [of the Worker's Compensation Law]. Therefore any person who is not required to be covered for workers' compensation benefits would not be deemed to be covered solely because of the existence of the comprehensive personal liability policy.

N.Y.Work.Comp.L. § 3, practice commentary. The practice commentary also notes that section 3420(j) was added "to protect the homeowner from unexpected liability when the [Workers' Compensation] Board determines that a person, who the homeowner did not believe required coverage, is entitled to

benefits." *Id.* It is also of note that all comprehensive homeowner's policies will be construed to include this form of workers' compensation coverage by virtue of section 3420(j) "whether or not the applicable endorsement has been attached to the policy." N.Y.Gen.Counsel Op. No. 2–28–85, N.Y.Ins. Bull. (Feb. 28, 1985).

There are interpretations and rulings by New York Worker's Compensation Board (the "Board") which support this analysis. In *In re Howard Frisch*, No. 5881 4414, 1992 WL 206148 (N.Y.Work.Comp.Bd. Aug. 10, 1992), the Board found that where a domestic servant worked less than 40 hours per week "[t]he purchase of a homeowner's policy which provides coverage for worker's compensation benefits for a domestic servant working less than 40 [hours] per week is not deemed to be an election to cover such employees under the Worker's Compensation Law [§§ 3, Group 19 or 50]." *Id.* at *3 (citing N.Y.Ins.L. § 3420(j)); *see also In re Home Owner*, No. 09254557, 1996 WL 65670, *2 (N.Y.Work.Comp.Bd. Jan. 26, 1996) (holding that adult worker hired to trim homeowner's tree branches not defined as an employee under WCL § 2(4) because "the provisions of Section 3420 of Insurance Law at subsection (4)(j)(1) ... did not act as an election to provide coverage to this claimant, who under [WCL], was not required to be covered."); *In re John & Francis Homin*, No. 5930 7717, 1994 WL 708589 (N.Y.Work.Comp.Bd. Dec. 6, 1994) (finding that because claimant engaged in casual work, claimant "is not deemed to be an employee under § 2(4) ... under the provisions of [ ] § 3420(j) of the Insurance Law.").

*In re Gertrude Mokotoff*, No. 58705854, 1990 WL 150675 (N.Y.Work.Comp.Bd. June 19, 1990), is directly on point. In *Mokotoff*, the endorsement to the homeowner's insurance policy at issue was virtually identical to the one disputed in this case, and the Board found that the claimant was a domestic servant who worked *less* than forty hours per week. *Id.* at *1–*2. Like the district court in the instant case, the Worker's Compensation Law Judge (the "Referee"): (1) found that the employer's homeowner's insurance policy was ambiguous; (2) applied general contract law, construing the ambiguous clauses against the insurer; and (3) found that the claimant was a covered employee by deeming the endorsement to be the homeowner's election of coverage. *Id.* at *1–*2.

Upon appeal, however, the Board reversed the Referee's findings. The Board held that the claimant was "not entitled to worker's compensation benefits under the provisions of the employer's homeowner's insurance policy" because pursuant to Section 3420(j)(1) of the Insurance Law, "the employer did not elect to procure Worker's Compensation Coverage, which was of a voluntary nature, for the claimant." *Id.*

Finally, I believe that the majority's reliance on *Mostow v. State Farm Ins. Co.*, 88 N.Y.2d 321, 645 N.Y.S.2d 421, 668 N.E.2d 392 (1996), is misplaced. The majority finds that because this case involves the interpretation of an insurance policy, the insured is entitled to have it construed purely as a contract, without reference to the underlying statutory definitions. *Ante*, Maj.Op. at 699. In *Mostow*, the New York Court of Appeals interpreted an insurance policy with an allegedly ambiguous endorsement, providing coverage of $100,000 per person and up to $300,000 if two or more persons were injured. 88 N.Y.2d at 323, 645 N.Y.S.2d at 421, 668 N.E.2d at 392. Two injured persons made claims under the policy and received arbitral awards—one for $190,000 and the other for $100,000—despite section 3420(f)(2)(A) of the Insurance Law which states that a total of $300,000 may be awarded "subject to" a $100,000 per person limit. *Id.*, 88 N.Y.2d at 324–25, 645 N.Y.S.2d at 422, 668 N.E.2d at 393. (quoting N.Y.Ins.L. 3240(f)(2)(A)). Nonetheless, the Court of Appeals allowed the awards to stand and found the endorsement to be ambiguous, because it lacked the "subject to" language of the statute. *Id.*, 88 N.Y.2d at 325, 645 N.Y.S.2d at 423, 668 N.E.2d at 394. The Court of Appeals held that the insured's interpretation was not "contrary to law" merely because it resulted in a greater recovery than provided for under the statute. *Id.*, 88 N.Y.2d at 326, 645 N.Y.S.2d at 423, 668 N.E.2d at 394.

**704**

In this case, although we are faced with a similar challenge to the clarity of a policy by an insured, and reliance on an underlying statute by an insurer, there is an important distinction and *Mostow* is not controlling. The statute relied on by the insurer in *Mostow* did not state that no insurance policy could be deemed to waive the $100,000 per person recovery limit. Thus, the "subject to" language may have been required under the circumstances of that case to prevent ambiguity. Here, however, section 3420(j)(1) explicitly precludes the interpretation urged by the Habers—that the Endorsement be deemed an election of workers' compensation coverage not otherwise required by law. The wording of the statute seems to anticipate the exact challenge that the Habers present here. Thus, the interpretation of the Endorsement urged by the Habers is explicitly contrary to law, and the Endorsement is not ambiguous. While it may be true that the Endorsement does not word-for-word track the language of the section 3420(j) of the Insurance Law, this Court is without power to simply ignore the last sentence of section 3420(j), which explicitly prohibits this portion of a homeowner's insurance policy from being deemed an election of coverage pursuant to sections 3(1), Group 19, and 50 of the WCL.

In sum, based on the explicit language of the controlling statutes, I believe that the majority opinion is incorrect, and that the district court erred as a matter of law in ruling that the Endorsement should be deemed an election of coverage of the WCL. I would reverse and remand for entry of a declaration consistent with this opinion.