159 F.3d 76
 WASTEMASTERS, INC., formerly known as F & E Resource Systems
Technology, Inc., Plaintiff-Counter-Defendant-Appellee,
v.
DIVERSIFIED INVESTORS SERVICES OF NORTH AMERICA, INC.,
Defendant-Counter-Claimant-Appellant.
 Docket No. 97-9338.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 28, 1998.
Decided Oct. 20, 1998.
 
 Richard L. Dorff, Mintz & Fraade P.C., New York, NY, for Defendant-Counter-Claimant-Appellant.
 Michele A. Connaugton, Morgan, Lewis & Bockius, LLP, New York, NY (John M. Linsenmeyer and John J. O'Donnell, on the brief), for Plaintiff-Counter-Defendant-Appellee.
 Before: CALABRESI and STRAUB, Circuit Judges, and TSOUCALAS, Judge.*
 CALABRESI, Circuit Judge:
 
 
 1
 Diversified Investors Services of North America, Inc. ("Diversified") appeals from a judgment of the United States District Court for the Southern District of New York (Andrew J. Peck, Magistrate Judge ) entered on September 25, 1997, which, following a bench trial, granted declaratory relief to Wastemasters, Inc. ("Wastemasters"). The court set aside a contract between Wastemasters and Diversified, and rejected Diversified's breach of contract and quantum meruit counterclaims related to that contract. We conclude that the magistrate judge's finding that the contract was void or voidable since there was no "meeting of the minds" between the parties was clearly erroneous. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 In 1994, Wastemasters needed additional financing for its operations. To help locate this financing, Wastemasters engaged the services of Diversified. The finder's agreement (the "Agreement") between Wastemasters and Diversified stated: "Should Diversified be successful in finding a suitable firm that takes an interest in [Wastemasters,] [Wastemasters] shall grant to Diversified a five (5) year option to purchase 500,000 shares of [Wastemasters] at an exercise price of 60cents per share." A memorandum from Wastemasters' Board of Directors drafted contemporaneously with the Agreement stated that Diversified's option would "be issued on a pro rata basis relative to the services performed."In due course, Diversified introduced Wastemasters to Nichols, Safina, Lerner & Co. ("Nichols"), a brokerage firm that subsequently purchased 100,000 shares of Wastemasters' stock at a price of $125,000. The record does not indicate whether Nichols purchased treasury shares, thereby providing new capital to Wastemasters or, instead, bought the stock from Wastemasters' principal owners. Following Nichols' purchase, Wastemasters refused to grant Diversified the option for 500,000 shares.
 
 
 3
 A bench trial was held before Magistrate Judge Andrew J. Peck on Wastemasters' claim for declaratory relief to set aside the Agreement and on Diversified's counterclaims for breach of contract and quantum meruit. At trial, the former president of Diversified, Herman Finesod, admitted that the phrase "finding a suitable firm that takes an interest in [Wastemasters]" in the Agreement was not a precise term of art, but contended that it had meaning and that Wastemasters was obligated to give Diversified an option to purchase 500,000 shares once Wastemasters was introduced by Diversified to a "suitable firm." He maintained that Diversified performed its part of the contract when it arranged for Wastemasters to meet Nichols. Wastemasters countered that the Agreement gave it the sole discretion to determine both when the Agreement had been fulfilled and how much Diversified was to be paid in the event of partial fulfillment. From Wastemasters' perspective, Diversified's efforts to secure the Nichols investment were insufficient to justify any option rights.
 
 
 4
 Magistrate Judge Peck issued a ruling from the bench at the conclusion of the trial. He found that there had been a "lack of meeting of the minds" between the parties and that the contract was therefore "void or voidable." He also held that Diversified had failed to establish damages in its breach of contract claim, or to establish the reasonable value of its services in its quantum meruit action.
 
 DISCUSSION
 
 5
 Diversified's argument is that there was, in fact, an enforceable agreement between the parties since the phrase "finding a suitable firm that takes an interest in [Wastemasters]" had a definite meaning. Wastemasters, in effect, denies this. Accordingly, we must begin by determining what, if any, sense is to be given to that phrase and whether that meaning can be gleaned from the words themselves or, if the language employed is ambiguous, from the context in which it was used.
 
 
 6
 "Whether contract language is ambiguous is a question of law, which we review de novo." Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir.1998). But "[w]hen the district court as factfinder is confronted with a contract provision that is not unambiguous, it may properly consider evidence extrinsic to the contract itself,.... The court's findings as to the meaning of such a provision ... may not be disturbed unless they are clearly erroneous." In Time Prods., Ltd. v. Toy Biz, Inc., 38 F.3d 660, 665 (2d Cir.1994) (citation omitted).
 
 
 7
 The Agreement in this case was in some respects ambiguous. There is no single meaning that attaches to the phrase "finding a suitable firm that takes an interest in [Wastemasters]." "Interest" could, for example, refer either to an economic interest, such as a direct investment, or to a non-economic interest, such as financial advice. And Diversified's contention that, as a matter of New York law, finding a stock purchaser constitutes, without more, the "finding [of] a suitable firm that takes an interest in [Wastemasters]" is not supported by any authority. The district court, therefore, correctly looked at extrinsic evidence to determine what the contract meant.
 
 
 8
 We conclude, however, that the magistrate judge's determination--reached after considering the extrinsic evidence--that no "meeting of the minds" had occurred at all in this case was clearly erroneous. The record instead requires a holding that an enforceable contract to pay a finder's fee did exist, but only under certain circumstances. Thus, if Diversified found an investor who provided significant funds directly to Wastemasters, and Wastemasters refused to pay Diversified the warrants specified, we believe that Wastemasters' actions would violate the parties' agreement and constitute a breach of contract. Conversely, we think it dubious that a meeting of the minds had been reached obligating Wastemasters to give the option even if Diversified introduced an investor who did no more than buy some, but not all, of the stock owned by Wastemasters' previous principal owners. We therefore reject both Wastemasters' extreme view that it had unlimited discretion under the Agreement to determine whether Diversified had performed "suitabl[y]," and Diversified's equally extreme position that any "interest" taken by someone presented by Diversified would satisfy the contract.
 
 
 9
 The crucial question, hence, is not whether a contract existed between Wastemasters and Diversified, but whether Diversified's performance under the Agreement was sufficient to obligate Wastemasters' payment of at least part of the 500,000-share option. We reject the magistrate judge's conclusion that, because the value of the 500,000-share option promised to Diversified was potentially much greater than $125,000, Diversified's role in securing the Nichols purchase of $125,000 worth of Wastemasters' stock could not, under any circumstances, constitute adequate performance. The terms of an agreement are generally within the purview of the parties, and even a contract that is ambiguous at its fringes may have a core meaning that has been agreed to by the parties and that can therefore be enforced in its terms. See Spear, Leeds & Kellogg v. Central Life Assurance Co., 85 F.3d 21, 28 (2d Cir.1996) (counseling courts that are interpreting contracts to "ascertain and implement the reasonable expectations of the parties who undertake to be bound by its provisions"). In such cases, courts should not rewrite the contracts before them to conform to their own conception of business equity.
 
 
 10
 In the case before us it seems manifestly clear that, if Diversified's efforts led to a direct investment of $125,000 of new money into Wastemasters, then Wastemasters breached the Agreement by refusing to grant Diversified at least a portion of the 500,000-share option. On the other hand, if the Nichols purchase involved only shares of stock bought from Wastemasters' principal owners, then in our view Diversified's performance would have been inadequate under the Agreement. In that situation, Diversified would have produced a firm whose actions, by increasing the price of Wastemasters' shares on the open market, at most resulted in an indirect financial benefit for Wastemasters. And, although Wastemasters may have wished to have its stock price bolstered, we cannot say that there was a meeting of the minds to the effect that fulfillment of this objective alone would have been enough to trigger the option deal. Such a buyer would not be "a suitable firm that takes an interest in [Wastemasters]."
 
 
 11
 The record does not indicate, however, whether the Nichols purchase was of already existing stock or instead represented an influx of new funds into Wastemasters. On remand, the district court should resolve this factual ambiguity. If it determines that Nichols bought its stock from Wastemasters' owners, then its original decision can stand. If, instead, it decides that the Nichols purchase constituted the introduction of new capital, then Wastemasters will be in breach of the Agreement. Should the district court so find, then, in light of our determination that, under those circumstances, a contract existed between the parties, it must reconsider the extent of Wastemasters' breach.
 
 
 12
 We decline to affirm on the basis of the trial court's alternate conclusion that Diversified failed to establish damages on its breach of contract claim. As the trial court will have to reconsider the extent of Wastemasters' breach if the Nichols purchase constituted the introduction of new capital, we believe it is also appropriate to direct the trial court to reconsider the extent of the damages that flowed from any breach of contract.[1]
 
 
 13
 The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Nicholas Tsoucalas, Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Since we have concluded that a contract may well exist in this case, we decline to address Diversified's alternative argument that it should have recovered under quantum meruit