**FRAZER EXTON DEVELOPMENT, L.P., Plaintiff–Appellee–Cross– Appellant,**

v.

**KEMPER ENVIRONMENTAL, LTD., Defendant–Appellant–Cross Appellee,**

---

**Marsh USA, Inc., Defendant–Cross–Appellee.**

**Nos. 04–4704CV(L), 04–4860CV(XAP).**

United States Court of Appeals, Second Circuit.

Oct. 31, 2005.

Mark Robert Vespole, (Katherine E. Tammaro, on the brief) Soderstrom, Maloney & Priess, Newark, New Jersey, for Plaintiff–Appellee.

Neil S. Witkes, Manko, Gold, Katcher & Fox, LLP, Bala Cynwyd, Pennsylvania, for Defendant–Appellant.

Jonathan P. Wolfert, Kaplan, Thomashower & Landau LLP, New York, New York, for Defendant–Cross Appellee.

Present: WALKER, Chief Judge, MESKILL, and McLAUGHLIN, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED** that the judgment of the district court be, and it hereby is, **AFFIRMED.**

Defendant-appellant Kemper Environmental ("Kemper") appeals from a July 30, 2004, declaratory judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge* ) holding that the insurance policy issued to Frazer Exton Development ("FED") by Kemper provides cost-cap coverage for whatever remedy the EPA may issue and for all investigative costs incurred during the policy period, October 31, 1998, to October 31, 2008. The district court also held that FED's claims against Marsh USA, Inc. ("Marsh") are moot and that Kemper is not liable under Pennsylvania's bad faith statute. Kemper argues that the district court erred in holding that (1) the policy provides cost-cap coverage for any remedy except Alternative B, and (2) the policy covers investigative costs incurred before remediation begins. FED argues that the district court erred in dismissing their claim against Kemper under Pennsylvania's bad faith statute. We assume familiarity with the facts and procedural history, and we affirm the district court's judgment.

Insurance policies are contracts and are therefore interpreted according to the rules of contract interpretation. *World*

*Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183–84 (2d Cir. 2003). "In New York, if a contract is straight forward and unambiguous, its interpretation presents a question of law for the court," *Postlewaite v. McGraw–Hill, Inc.*, 411 F.3d 63, 67 (2d Cir.2005) (internal quotation marks omitted), which we review de novo. *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir.1998).

We believe that the policy at issue unambiguously covers FED's anticipated claims. Coverage F of the policy provides cost-cap coverage for "cost overruns," which includes expenses in excess of the self-insured retention amount incurred in the investigation, removal, disposal, or treatment of pollution conditions for the "covered project." The "covered project" is defined as "Remediation of the Former Cyprus Foote Mineral Company Lithium Ore Processing Facility, Exton, West Whiteland Township, PA, and as per the associated remediation plan and related costs developed by [ERM] and on file with the underwriter." The initial plan referred to in the "covered project" is the plan known as Alternative B. But coverage is not limited to expenses related to Alternative B. The policy also covers costs associated with any changes to that plan that are within the scope of Endorsement No. 2, which expands coverage to include expenses incurred because of changes to the covered project that address the discovery, during the policy period, of new or increased levels of pollution conditions or changes to environmental standards. Therefore, the policy covers expenses incurred in carrying out the initial remediation plan (Alternative B) as modified by any changes made pursuant to developments described in Endorsement No. 2.

The provisions in the policy related to the coverage period show that the expenses related to the remedial plan and any changes made thereto are unambiguously covered from October 31, 1998, to October 31, 2008. Item III, provides that the policy period is October 31, 1998, to October 31, 2008. Endorsement No. 8 specifies that Coverages A and D will come into effect 90 days after the remediation project is complete but does not apply this delay to Coverage F. Finally, Endorsement No. 4 specifically provides for retroactive coverage beginning October 31, 1998. As a result, Coverage F provides coverage for cost overruns, which are environmental cleanup costs that exceed the self-insured retention amount, as specified in Alternative B, for remediation of the CFM Site subject to changes described in Endorsement No. 2 from October 31, 1998, to October 31, 2008.

Even if the policy is ambiguous, the outcome is dictated by the principle of interpretation known as *contra proferentem*. This doctrine holds that ambiguities in an insurance policy must be construed in favor of the insured. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir.2001). Any ambiguities must therefore be resolved in FED's favor, and we reach the same result.

We have carefully considered FED's claim against Kemper under the Pennsylvania bad faith statute and find it to be without merit.

For the reasons set forth above, the decision of the United States District Court of the Southern District of New York is hereby **AFFIRMED**.